WILLIAM INGRAM v. PRAIRIE BLOCK COAL COMPANY, ELMIRA COAL COMPANY AND HENRY WINGER, Appellants.—5 S. W. (2d) 413.

Division Two, March 24, 1928.

*W. E. Suddath* and *A. M. Clark* for appellants.

*Pross T. Cross* and *Davis & Ashby* for respondent; *Nick M. Bradley* and *Gerald Cross* of counsel.

WHITE, P. J.—Action for personal injuries. Suit was filed in the Circuit Court of Ray County; on application of plaintiff, change of venue was granted and the cause went to Johnson County, where a trial before a jury, January 3, 1925, resulted in a verdict and judgment for the plaintiff in the sum of twelve thousand dollars. Defendants appealed.

The plaintiff, William Ingram, employed by the Prairie Block Coal Company, an Iowa corporation, worked for that company in a coal mine at Elmira in Ray County, Missouri. The injury complained of was incurred March 24th or 25th, 1923. The defendant, Henry Winger, was foreman in charge of the work, and plaintiff was under his direction at the time of the alleged injury.

Plaintiff had been working for the Prairie Block Coal Company for three years, in Iowa and in Missouri. He was twenty-six years of age. He worked with what is called a machine crew, consisting of himself and one John Servi, and the foreman, Henry Winger. Winger was called the machine-runner, probably because he directed the operations of the machine. A mining machine was about eight feet long and two and a half feet wide. It was run along next a face of coal, and knives or picks operating on an endless chain cut the dirt from under the coal a space of from two and one-half to three feet wide. A shoveler came along and threw this dirt away from the face into what is called the "gob." The roof of the mine at the place where the plaintiff was working was about three feet high. It appears that the machine was pulled by a chain fastened to a jack set further in the drift fifty feet in advance of the machine. A jack was an iron bar about four and one-half feet long. It was set on the floor with the top in a hole punched in the roof so that it slanted toward the machine. The chain passed around the bottom part of the jack, and as the machine was pulled the pressure tightened the jack in its place.

On the day mentioned this machine crew went to work about four o'clock in the afternoon for a night shift. The workmen took turns about setting the jack ahead of the machine and in shoveling the dirt into the gob. They had their dinner about eight-thirty P. M., and after they returned to work Ingram was directed by the foreman, Winger, to set the jack. He crept down to the proper point in front of the machine and sounded the roof. It sounded to him "drummy;" this was described as a sound which indicated that the roof was loosening—in danger of giving way. He testified that he had a cold in his head and could not hear very well, and he came

back to Winger and told him it sounded drummy to him. Winger then went and made a test of it. Plaintiff testified:

"He (Winger) came in there and he was picking around in this roof with a pick and he said, 'It looks like we got all these bad places,' and I said, 'Well, Henry, do you think it needs extra strapping and props to hold it?' and he said, 'Oh, it's safe, go ahead and set that jack; I think we can get by with it.'"

Winger and Servi went up the fence a way, and the plaintiff proceeded to set the jack, and while he was picking a hole in the roof a chunk came out, about the size of his two hands. That left a hole where he could put the jack. He then set the jack, and crawled on his hands and knees to pick up the piece of rock which had fallen, when a large piece of rock fell from the roof upon his back, causing the injury for which he sued.

The negligence alleged upon which the plaintiff based his right to recover was that the defendant's foreman negligently ordered and directed plaintiff to do the work in a dangerous place; that the roof was unsafe, a fact known to the defendant, and the foreman, Winger, assured the plaintiff that the roof was reasonably safe after he (Winger) had inspected it, and the plaintiff relying upon that assurance attempted to do the work and was injured by reason of that negligent order.

I. The defendants filed a demurrer to the evidence which the trial court overruled, and error is assigned to the ruling. Plaintiff was a miner of experience and knew as much about the mine, it is claimed, as the foreman upon whose experience he relied. He sounded the roof and he said it sounded "drummy" and that was an indication that it was bad. The contention is that the plaintiff was negligent as a matter of law by going into the danger which he knew existed. The rule is that, although an employee may know of the danger of a work which he is directed to do, unless the danger is so glaring that no reasonable person in the exercise of ordinary care would venture into it, he has a right to rely upon the superior knowledge of his foreman or employer, and is not guilty as a matter of law in obeying orders and taking the accompanying risk. [Clark v. Iron & Foundry Co., 234 Mo. 436, l. c. 450; Stephens v. Hannibal & St. Joseph Ry. Co., 96 Mo. l. c. 212; McCarver v. St. Joseph Lead Company, 268 S. W. 689; Hall v. Coal & Coke Co., 260 Mo. l. c. 359; Brann v. Hydraulic Press Brick Co., 288 S. W. l. c. 943.]

The Hall case and the McCarver case just cited, were mining cases, very similar in the facts to the case here. In each case a workman was ordered into a dangerous position and obeyed, and it was held he was not negligent as a matter of law. After Winger had

sounded the roof and had gone away, when plaintiff was picking a hole in the roof to set a jack, a rock fell and the plaintiff did not again test the roof. It is argued that ordinary caution required him, after the fall of that rock, again to sound the roof.

A very small fraction of time elapsed from the time the rock fell until the plaintiff was injured. He said: "After that chunk came out I had a hole there for my jack." This question was asked:

"And without looking to see what the condition of the roof was you went on over and picked up that piece to throw it out? A. That was where Henry (Winger) tested it.

"Q. Without looking at it again you reached over and picked up that piece of rock? A. That roof had been tested.

"Q. Is that correct? A. That roof had been tested by Henry."

The piece fell when he was picking the hole. He said he set the jack in the hole because that was what he wanted. This piece fell on his pick and rolled about four feet, as we get it from the record, towards the machine. His purpose in picking up the piece was to clear the space for the machine. This evidence indicates that he apprehended no additional danger on acount of the falling of the piece of rock. It merely furnished the hole in which to insert the jack. Whether the falling out of the chunk indicated additional danger which he had not observed before depended upon how the place looked. By setting his jack in it plaintiff evidently thought the roof sound at that point because Winger had tested it. The defendants in their arguments on this point based their position upon the evidence of some of their own witnesses who did not see the place, but testified that the falling of such a chunk indicated that the roof was bad. The jury was not obliged to believe such witnesses.

We conclude that it was a question for the jury whether plaintiff was guilty of contributory negligence which would prevent his recovery.

II. The Elmira Coal Company filed a separate demurrer to the evidence, on the ground that the injury which the plaintiff suffered was incurred while he was employed by the Prairie Block Coal Company. The demurrer was overruled. The Prairie Block Coal Company was operating the mine without a permit to transact business in this State, at the time of the injury to the plaintiff which occurred about March 24, 1923. The Prairie Block Coal Company, April 10, 1923, conveyed all of its property in Missouri to the Elmira Coal Company, which had just been organized, for the recited consideration of one hundred and twenty-five thousand dollars. No part of that consideration had been paid at the time of the trial. The Prairie Block Company maintained no office in Missouri. Its books were at Elmira. Its president, Mr. Widmer, was also the president of the Elmira Com-

pany. According to his testimony, the officers of the two were practically the same. When he was asked on cross-examination who were the stockholders of the Elmira Company, the defendant objected to the evidence and it was excluded. The conclusion is irresistible that the Elmira Coal Company was incorporated for the purpose of complying with the requirements of the Missouri law, and it was in fact either a continuation of the Prairie Block Company or a subsidiary corporation. The rule is that where one corporation purchases the stock and assets of another corporation, and the circumstances are such that the purchasing corporation is a mere continuance of the selling corporation, or that the transaction was fraudulent in fact, the purchasing corporation *ipso facto* is liable for the debts and liabilities of the selling corporation. [7 R. C. L. 183; Sweeney v. O'Brien Mining Company, 194 Mo. App. 140, 1. c. 147; Goodwin v. American Railway Express Co., 294 S. W. 100.]

In the Sweeney case the Springfield Court of Appeals quoted the principle thus:

" 'Where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation.' "

The plaintiff asked no instruction requiring the jury to find any specific facts in order to render a verdict against the Elmira Company, so if there was *any* evidence which would authorize such a verdict, appellant is not in a position to complain. The defendant, however, supplied that omission by asking an instruction which the court gave, to the effect that the jury should not find a verdict against the Elmira Coal Company unless they should find that the transfer of the property of the Prairie Block Company to the Elmira Company was wholly without consideration, or that it was made with unlawful fraudulent intent on the part of the Prairie Block Company to hinder, delay or defraud its creditors or some of them, and that the Elmira Company had knowledge of such fraudulent purpose. Therefore if there was evidence to sustain either one of those conditions the appellant is not in condition to complain that the matter was submitted to the jury as against the Elmira Company. The fact that the officers of the two companies were the same; that all the assets of the Prairie Block Company were transferred to the Elmira for a recited consideration none of which was paid, and that the stockholders were the same, would warrant the jury in finding that the transfer was without consideration, or that it was in fact the same company, incorporated under another name. The fact that this transfer took place within a few days after the injury to the

plaintiff, and when the Prairie Block people knew suit was about to be brought, and that the Prairie Block Company had no property in Missouri, no office or place where service could be had upon it, together with the absence of any paid consideration, were circumstances from which the jury might very well find that the conveyance was made in order to delay or defraud creditors. Although the defendant introduced evidence tending to show that negotiations for making the transfer began before the injury to the plaintiff, the jury were not obliged to believe such evidence.

It is true that the usual method to recover against the purchasing company for a claim held against the selling company is by proceeding in equity, but no objection here was made to the form of the proceeding; no claim that the plaintiff should first obtain judgment against the Prairie Block Coal Company and then proceed against the property in the hands of the Elmira Company or proceed by garnishment. The objection flatly is that the Elmira Company would not be liable in any event under the facts pleaded in the case. As the record stands, there was no error in the mere fact that a verdict was rendered against the Elmira Company as well as against the Prairie Block Company.

III. Error is assigned to the admission of several items of evidence. While the plaintiff was on the stand he was asked how many times he had seen places where rocks fell in mines from the roof. He replied that he had seen them all over the pit, in places where they had fallen in. A number of questions were asked and answered by him in relation to the kind of rocks that he had seen fall in this mine and in other mines, and the kind of material that had fallen. No objection was presented to any one of those questions, which, with their answers, covered about a page of the record. Then the plaintiff was asked this question:

"Q. The times you saw them fall, were people hurt?"

Then for the first time defendants objected, in this way:

"We object to that. That is outside the realm of this case and has no connection with this case."

"THE COURT: It throws some light on the circumstances. It is for the information of the jury. The objection will be overruled."

The appellant assigns error to this ruling. Note the objection was that the evidence was outside the realm of this case; that is, irrelevant. While it might have been entirely incompetent for other reasons, it was not irrelevant. The fact that in mines of that kind pieces of rock and other substances fall from the roof of a mine frequently, including this particular mine, tended to show the danger attendant upon working in such a mine, and the necessary precaution required in inspecting it, and care on the part of the workmen

in entering the mine. While such evidence may have been damaging to the plaintiff, showing that he was required in the exercise of ordinary care to take into account such dangers, or that he assumed the risk of injury as an incident to his calling, it was nevertheless relevant.

Assuming that it was irrelevant, no other questions were asked by plaintiff's counsel upon that score, notwithstanding the ruling, and the *defendant did not ask to have that particular evidence stricken out.*

The court then took up the matter and asked several questions as to people being hurt by the falling of rocks from the roof, and the plaintiff answered that he had seen one killed and he had seen others hurt. Finally defendant objected, as follows:

"Q. BY MR. SUDDATH: We want to strike out all the questions by the court and the answers by the witness for the reason that *it is prejudicial,* and we also ask the discharge of the jury for the reason that the error is such that the same cannot be cured by instruction to strike out or undertaking to withdraw the same from the consideration of the jury."

The court then said that he would not pass upon the matter at the time, and the jury retired. Later the jury was called in and the court gave this instruction:

"THE COURT: The last objection by the defendant to the question asked Mr. Ingram about men being hurt in the mine, the objection is sustained and the question and answer stricken out for the reason, among others, that the fact of another being hurt at any other time could not affect the rights of the plaintiff or the defendant in any way, and the jury is instructed to entirely disregard any question or answer along that line."

This direction of the court was sufficiently emphatic to apprise the jury that they were not to consider that sort of evidence. They were told to "entirely disregard any question or answer along that line." The questions and answers were stricken out.

It is claimed that the ruling was not definite and explicit enough so that the jury would understand that this instruction to disregard covered all the questions which had been asked by counsel before the court took it up. Now it must be noted that the appellant asked no further ruling on any of the questions asked by counsel in that connection, but only questions asked by the court and answers to them.

Furthermore the objection urged to the evidence stated no reason why it is incompetent. Counsel merely said:

"We want to strike out all the questions by the court and answers by the witnesses for the reason that it is *prejudicial.*"

The fact that the evidence is prejudicial does not make it incompetent. All the evidence which plaintiff introduced to make out a case was necessarily prejudicial. If such evidence was excluded because it had a prejudicial tendency against the defendant, that is, if it tended to influence the jury to render a verdict in favor of the plaintiff, then plaintiff could never make out a case. The court cannot be convicted of error because of that circumstance.

IV. Plaintiff in his examination was asked this question, in relation to the inspection made by Winger:

"Q. Would you have gone there and picked that hole if he had not made that examination and told you he thought it was safe and for you to go ahead?"

This was objected to, objection overruled, and the question asked again in a little different way, and the witness answered that he would not. Error is assigned to that ruling. The objection urged was this: "We object to that as being argumentative and calling for speculation on the part of this witness; not in evidence."

This evidence was merely another way of saying that he relied upon Winger's judgment in going in there. We cannot see that it is speculative, or that it added anything to what had already been said by the witness. True, it was for the jury to say from all the evidence whether plaintiff did rely upon the assurance of the foreman, but it was entirely proper for him to testify to the fact.

Plaintiff on the stand testified to a conversation he had with Mr. Widmer, the president of the company, in which Widmer told him that he knew the plaintiff got hurt, but plaintiff had no money to defend his case and he, Widmer, had lots of money and would get the case in the Federal court. Counsel at the time objected as not being responsive to the question, and an attempt to prejudice the jury. Then followed another objection in this form: "That is objected to." There was no exception saved to the ruling, so we must assume that defendant did not at the time intend to carry that objection any further.

While the president, Widmer, was on the stand he was asked how often he went into the mines and how extensively he examined them. Then he was asked if he intended not to face the dangers which the boys who worked there faced. That was objected to and not answered. Then the question was repeated in this form:

"Q. You mean by that the conditions in there were so unsafe you didn't care to risk yourself back there inspecting and looking at the different parts of your own coal mine? A. *No sir, I am the last man to be afraid of that.*"

The first question was objected to as "not tending to prove or disprove any issue in this case;" which is to say that it was irrelevant. We cannot say it was irrelevant. The question might tend to elicit the degree of care which the superintendent exercised over his mine. But it was entirely harmless because of the answer which he gave. The witness, no doubt, did not intend to boast that he was a brave man and would face any kind of dangers to which the men were subjected; he was the last man to be afraid because he considered the mine perfectly safe. It enabled him to boost the character of the mine and his manner of caring for the safety of the men. The mine was so safe that he would never be afraid of it under any circumstance. Instead of being harmful the evidence was helpful. Appellant has no reason to complain.

V. Over the objection of the defendants the plaintiff introduced in evidence the separate answer of the Prairie Block Company, and this is assigned as error. The trial court might very well have refused to admit that pleading in evidence. It was already before the jury. But it is impossible to see how the defendant could be harmed by it. The plaintiff's counsel, in his argument, had a right to refer to any allegation in the answer which he might think favorable to his case. It was before the jury. The fact of the transfer of the property from the Prairie Block Company to the Elmira Company was pleaded in the separate answer of each company. Appellant suggests that the real purpose of introducing it was to show that the Prairie Block Company was an Iowa corporation. But that fact was already before the jury. It was a proper matter to come before the jury, because the Elmira Company was denying liability and the nature of the transfer of the mine was quite pertinent to that particular issue, including the fact that the Prairie Block Company was a corporation and had no property in Missouri, and kept no office where service could be had upon it.

VI. Error is assigned to the refusal of Instruction M offered by defendant, as follows:

"The jury are instructed that if you believe from the evidence that it was part of plaintiff's duty whenever he received orders or directions from Henry Winger (the foreman) to set a jack ahead of the machine, to rely upon his own judgment as to where he set it and to inspect the roof and determine for himself as to whether it was safe to set the jack, then your verdict should be for defendants."

The court gave on behalf of defendant, Instruction F, as follows:

"The jury are instructed that even though you may believe from the evidence that Henry Winger was a vice-principal of defendant, Prairie Block Coal Company, and that he directed the plaintiff to set a jack ahead of the machine, yet if you further believe from the evidence that the plaintiff when he set said jack did not rely upon said order or direction of Winger as an assurance that it was safe to set said jack in the place where he was about to set it, but relied upon his own judgment, experience and observation, then your verdict must be in favor of defendants."

Instruction M directs the jury to find for the defendant if it was the plaintiff's *duty* to rely up his own judgment in setting the jack. There was no evidence whatever that it was his *duty* to rely upon his own judgment, which would mean his duty to make inspection on his own account and depend upon that inspection. That general statement of his duty would not bring the matter within the particular facts of this case. The instruction does not require the jury to find that plaintiff was negligent in failing to make inspection or in failing to observe caution after making it, or in any particular. Suppose it was his duty to make an inspection and do the work at his own risk after such inspection? The instruction was erroneous because it did not require a further finding that he did not rely upon the test and assurance of Winger.

Instruction F correctly states the proposition, as favorable to the defendant as the evidence warranted, where it informed the jury that notwithstanding the plaintiff was instructed by Winger to set the jack, yet if he did not rely upon Winger's assurance that it was safe, but relied upon his own judgment and experience, then the verdict should be for the defendant. That correctly hypothesizes that particular issue and was all the appellant was entitled to in that respect.

VIII. Appellant makes numerous complaints of counsel for plaintiff in questions and remarks during the progress of the trial and in their arguments to the jury. Many of these objections were sustained by the court, and no further reprimand or ruling was asked. Plaintiff's counsel in his opening statement said something about the defendants taking some mules out of the mine before they lifted the wounded man out. That was objected to and objection sustained. No other ruling was asked. Then in examination of plaintiff his counsel asked him something about the statement he made to Mr. Widmer, the president of the company, and whether it was before or after he had a proceeding in the Federal court. On the protest of the defendant that was stricken out.

No other ruling was asked. Plaintiff's counsel asked him if he knew when a fire broke out in the mines. Objection to that was sustained and no further ruling was asked. That is a sample of objections.

At one point in the examination plaintiff's counsel asked him what sort of propping was under the roof, regular or extra. This was objected to as irrelevant. It was entirely relevant to the issue whether the place was safe or sufficient care had been exercised to make it safe. In a colloquy between the attorneys the court admonished them not to argue the matter. The answer was that regular propping was under the roof. How that could be injurious to the defendants it is difficult to see. It would indicate ordinary care.

On one occasion the plaintiff was asked how long after his injury there was a fire in the mine, plaintiff's counsel stating that he wanted to fix the date of the fire by his injury with reference to other proof. From what preceded it seemed that counsel was trying to fix the date or some other conversation with reference to the time suit was brought. It is impossible to see where appellant could be injured by that. We cannot see where any harm could have resulted from this because it had no connection with the condition of the mine at the time of the injury.

On one occasion on cross-examination the president of the company was asked if he didn't know that the plaintiff had nothing to eat but rabbits when he was making those hunting trips. This was provoked by evidence introduced by defendants to show that the plaintiff was not so badly hurt because he went hunting. Evidence that he was obliged to go hunting to get something to eat was not improper. At any rate, the objection to it was sustained and no further ruling was asked. The trial court is not to be convicted of error for failing to rule upon a proposition not brought to his attention, or failing to make a ruling which he is not asked to make. On several occasions a question asked by counsel for plaintiff, on objection, was withdrawn before a ruling. This is complained of as improper, but no reprimand was asked and no ruling requested of the court in such cases.

In his argument to the jury Mr. Bradley, attorney for plaintiff, referred to the fact that the plaintiff had a wife and children listening to see whether or not the jury would award him for the injury he had suffered. The objection to that was sustained. No further ruling was asked.

Mr. Cross, in his argument to the jury, mentioned the consideration paid by the Elmira Company to the Prairie Company for the property of one hundred and twenty-five thousand dollars, and suggested that was wealth in comparison with the possessions of the attorney in the case. Objection to that as improper argument was

660

overruled, but nothing further was said along that line. It is complained that Mr. Cross, counsel for plaintiff, talked about the "Swiss Gentleman," meaning the president of the Elmira Company, in connection with the X-ray pictures of the plaintiff made by Dr. Suddath. Then counsel suggested that Dr. Suddath was not getting a hundred dollars a day for appearing as a witness for plaintiff in the case. This had reference to a high-priced specialist who appeared as a witness for defendants. Objection to both these remarks was sustained and no further ruling was asked. Appellant is not in position to complain now that the court did not reprimand counsel or make any other ruling which he was not asked to make.

We are unable to find any ruling by the trial court of which complaint is made that would warrant a reversal.

Accordingly the judgment is affirmed. All concur.