RICHARD F. WILD v. NORMAN B. PITCAIRN and FRANK C. NICODEMUS, JR., Receivers of Wabash Railway Company, Appellants.—149 S. W. (2d) 800.

Division One, April 18, 1941.

916

*Nat S. Brown* and *Homer Hall* for appellants.

918

*Mark D. Eagleton* and *Roberts P. Elam* for respondent.

CLARK, J.—Defendants, receivers of the Wabash Railway Company, appeal from a judgment for $20,000 obtained by plaintiff in the Circuit Court of St. Louis City.

The petition alleges that plaintiff, while employed as a switchman on a train and cars being hauled on defendants' line in interstate commerce, and while attempting to operate a handbrake, was thrown from the car and injured by the sudden reverse turning of the brake; that the handbrake was inefficient and plaintiff's injuries were due to the failure of defendants to comply with the Federal Safety Appliance Act and the orders of the Interstate Commerce Commission "to have such car equipped with an efficient handbrake."

Defendants' answer admitted the appointment and qualification of the receivers and the operation of trains in interstate commerce, but denied all other allegations.

Appellants (defendants) assign many grounds of error which may be condensed and grouped as follows: (1) refusal of the court to sustain defendants' demurrers to the evidence; (2) admission of certain testimony; (3) the giving and refusal of certain instructions, and (4) that the verdict is excessive.

(1) *Demurrers to the evidence.* Appellants approach this and related questions from many angles. First, they say that the petition fails to properly allege a violation of the Safety Appliance Act, the argument being that, as the car belonged to another company, appellants were under no duty "to have it equipped with efficient handbrakes;" that such duty, so far as appellants are concerned, arose only if and when they moved the car in interstate commerce and that the petition does not allege that they did so move the car.

A casual reading of the petition, the gist of which is above stated, will show that there is no basis for this contention of appellants, for the petition does allege that the car was being hauled on defendants' line in interstate commerce.

Appellants and respondent hold different and conflicting views as to the character of evidence necessary to make a submissible case under the Safety Appliance Act for failure to maintain efficient handbrakes.

Appellants concede that it was unnecessary to prove negligence, but contend that there was a failure of proof because no defect in the handbrake was shown. Respondent contends that he was not required to prove any mechanical defect, but only that the handbrake was inefficient and that such fact was shown by proof that it operated inefficiently. The petition did not allege that the brake was defective; only that it was inefficient. Respondent's proof was to the effect that while he was attempting to turn the brake wheel in the

customary manner it suddenly spun around in the opposite direction and that such occurrence would not have taken place if the brake had been efficient.

The Federal Safety Appliance Act, 45 U. S. C., Sec. 11, page 59, Act of April 14, 1910, provides that it shall be unlawful for any common carrier subject to the provisions of the Act "to haul, or permit to be hauled or used on its line, any car subject to the provisions of this Act, not equipped with appliances provided for in this Act, to-wit: All cars must be equipped with secure sill steps and efficient handbrakes . . ."

The courts have repeatedly held that the duty to furnish efficient handbrakes is absolute and mandatory; that the plaintiff need not prove negligence on the part of the carrier; and that proof of the failure of the handbrake to work efficiently, when used in the customary and proper manner, fastens liability on the carrier without proof of any specific defect in the appliance. Henry v. Ry., 332 Mo. 1072, 61 S. W. (2d) 340; Cason v. Ry. (Mo.), 123 S. W. (2d) 133; Gieseking v. Ry., 344 Mo. 672, 127 S. W. (2d) 700; Lehigh Valley Ry. v. Howell, 6 Fed. (2d) 784; Didinger v. Pa. Ry., 39 Fed. 798.

In Henry v. Ry., supra, this court said: "The duty imposed upon the carrier by the Safety Appliance Act to equip its cars with efficient handbrakes is an unqualified, continuous, absolute and mandatory duty to maintain such brakes in a secure condition. (Citing cases.) The test of the observance of the duty imposed by the Safety Appliance Act is the performance of the appliance. A failure of the appliance to work efficiently will sustain a charge that the act has been violated, and render the carrier liable for an injury which results from such failure."

In Cason v. Ry. (Mo.), 123 S. W. (2d) 133, we said: "Plaintiff did not rely upon proof of a specific defect in the brake equipment. He did not need to do so nor to prove negligence on the part of defendant. . . . Inefficiency of handbrake equipment may be proved by either of two methods, viz.: Either by establishing some particular defect or by evidence showing that it failed to function when operated with due care in the normal and usual manner." (Citing cases.)

In Gieseking v. Ry., 344 Mo. l. c. 684, 127 S. W. (2d) 700, we said: "It has been uniformly held that it is not necessary for plaintiff to show a precise defect to make a case under the Federal Safety Appliance Act, . . . but only that a handbrake, properly set in the normal and usual manner, failed to work." (Citing cases.)

In Didinger v. Pa. Ry., 39 Fed. (2d) l. c. 799, the court said: "Assuming the proper setting of the brake, the fact that it did not hold demonstrates its inefficiency. . . . If the brake was properly set, as asserted, some defect must have been latent in it. Otherwise it would have held." This case also answers an argument made by

appellants' counsel in the instant case, to-wit; that, as plaintiff testified the pawl went into the ratchet and he "heard it click" while setting the brake, the brake must have been efficient and the injury due to some other cause. The manner of setting the brake described in the Didinger case was precisely the same as testified to by plaintiff in the instant case.

Appellants strongly rely on the case of Grand Trunk Ry. v. Holstein, 67 Fed. (2d) 780. In that case plaintiff testified that he had brought the car to a stop by applying the handbrake; that while the brake was still set the engine again coupled to the car; and that he was standing on the brake platform "hanging on to the brake wheel" when it suddenly spun around and threw him from the car. The court held that a demurrer to the evidence should have been sustained, saying that the case should be aligned with that of Burnett v. Pa. Ry. Co., 33 Fed. (2d) 579, rather than with the Didinger case, supra. The facts in the Burnett case are unlike those in the instant case and also unlike those in the Holstein case. In the instant case the brakeman was attempting to set the handbrake; in the Holstein case the brakeman had already set the brake, while in the Burnett case he was attempting to *release* the brake and the court rested its decision on the ground that the injury might have been caused by the brake having been set too tight by another workman and not to the inefficiency of the brake. It is difficult to reconcile the Holstein case with the cases heretofore cited herein and many others which reach a different result on similar facts. However, it appears in the Holstein case that the plaintiff's testimony was inconsistent with his previous statements and with other testimony and the court gave little credence to his testimony.

Appellants have cited and quoted from many decisions construing other provisions of the Safety Appliance Act and of the Boiler Inspection Act. The difference in the wording of some of these provisions make necessary a different character of proof from that required by the provision now under consideration. This is clearly pointed out in Fryer v. St. L.-S. F. Ry., 333 Mo. 740, l. c. 753, 754, 63 S. W. (2d) 47. So far as we have been able to find, the decisions of this court and of the Federal courts, with the exception of the Holstein case, consistently hold that proof of failure of a handbrake to properly function when operated in the usual and normal manner is sufficient to fasten liability on the carrier. Whether these decisions are grounded upon the theory that the Act requires proof of inefficiency only rather than proof of defectiveness, or upon the theory that proof that the appliance works inefficiently is presumptive proof that it is defective, the result is the same. In addition to cases above mentioned, see Colwell v. St. L.-S. F. Ry., 335 Mo. 494, 73 S. W. (2d) 222; Kimberling v. Wabash Ry., 337 Mo. 702, 85 S. W. (2d) 736.

In 2 Roberts Federal Liabilities of Carriers (2 Ed.), section 640,

page 1232, speaking of handbrakes, it is stated: "As in the case of automatic couplers, the test of compliance with this requirement of the statute is primarily effectiveness in operation. Thus it has been held that a finding that the brake rigging on a car was not defective was not equivalent to a finding that the brake was efficient."

Appellants say that the verdict is based on conjecture and speculation; that the evidence shows that the injury might have resulted from one of several causes, for some of which appellants would not have been liable, and the demurrers should have been sustained for that reason. Appellants cite many cases in support of the rule of law thus advanced. It is unnecessary to review such cases. They are ruled correctly, but the question is: do the facts of this case bring it within such rule?

Appellants' contention on this point is based upon certain evidence brought out by respondent in cross-examining two of appellants' witnesses. This evidence was to the effect that if a rock or bolt or other object gets in between the brake shoe and the wheel the brake mechanism will be caused to vibrate and "chatter;" also that a similar result might be caused by flat places on the car wheel. It was explained that "chattering" means a knocking noise. Appellants argue that this evidence shows that the injury to respondent may have been due to some object getting under the brake shoe or to flat places on the car wheels and not to a *defective* handbrake. This contention of appellants is unsound, for there was no evidence that anything did get under the brake shoe or that there were any flat places on the wheels, nor that either condition, if it had existed, would have caused the brake wheel to reverse and throw respondent from the car.

Appellants contend that respondent's account of his injury is contrary to general knowledge as to the physical facts and incredible. Appellants attempt to support this contention by an argument that if respondent had been thrown from the car by the reverse turning of the brake wheel he would have fallen either between the cars or on the side opposite from where he was found. We do not understand this argument. We cannot say it is incredible or even unlikely that respondent was thrown in the manner or the direction to which he testified.

Much of appellants' argument is based upon testimony introduced by them and not upon respondent's testimony. Appellants proved inspection of the car shortly before and shortly after the injury to respondent. They offered evidence tending to show that there was no defect in the brake mechanism and tending to cast doubt on respondent's testimony. All this is fully answered in the cases heretofore cited. Such evidence merely made a question of fact for the jury and did not furnish a reason why the court should have sustained the demurrers to the evidence.

924

(2) *Admission of testimony.* Dr. Pernoud, a witness for respondent, described the injuries which he found on examining respondent and gave his opinion that such injuries were due to a fall, that they were permanent and that respondent would suffer future pain. This testimony was received over appellants' objections that it called for a conclusion, invaded the province of the jury, not a matter for expert testimony and witness had not shown sufficient knowledge to answer the questions. The qualification of the witness as an expert was largely within the court's discretion. We think the evidence was a matter for expert testimony and was properly admitted. [O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55; Kimmie v. Terminal Railroad, 334 Mo. 596, 66 S. W. (2d) 561.]

Appellants assign as error the action of the court in overruling their objections to questions asked Dr. Pence as to whether he would freely give information to Wabash claim agents and lawyers respecting the condition of an injured employee. Dr. Pence was a Wabash employee and a witness for appellants. Appellants also assign as error the admission in rebuttal of evidence as to the effect of a foreign substance getting under the brake shoe and of flat places on the car wheels. Appellants have cited no authorities as to either of these assignments and have not argued them in their brief. The evidence seems to have been properly within the court's discretion. [Czezewzka v. Ry., 121 Mo. 201, 25 S. W. 911; Jones v. Ry., 343 Mo. 1104, 125 S. W. (2d) 5.]

(3) *Instructions.* Instruction No. 1 given at respondent's request, after leaving to the jury the question of respondent's employment and whether he used all means necessary to cause the handbrake to operate efficiently, continued:

". . . and that while plaintiff was so doing, if you so find, the wheel of said handbrake did suddenly and unexpectedly turn and revolve in the reverse direction to which plaintiff was applying said brake, if you so find, and that as a direct result thereof, if you so find, plaintiff was thus and thereby thrown from said box car and injured; and if you further find that the aforesaid unexpected revolving and reversing of said hand-brake under the circumstances aforesaid, if you do so find, were caused by the inefficiency of said handbrake, and that plaintiff's injuries aforesaid, if you do so find, were directly caused by and due to the aforesaid inefficiency of said handbrake, if you do so find, then your verdict will be in favor of the plaintiff and against the defendants herein."

Appellants say that this instruction is broader than the petition, did not require the jury to find from the evidence that defendants failed to have the car equipped with an efficient handbrake, and assumed that the handbrake was inefficient. Appellants cite a number of decisions holding that an instruction should not be broader than the pleadings, which is a correct statement of the law. However, we

do not believe the instruction is erroneous in any of the particulars mentioned by appellants. As we read the instruction it follows the petition and clearly leaves it to the jury to pass upon the efficiency of the handbrake.

Instruction No. 2 given at request of respondent, is as follows:

"The Court instructs the jury that, if you find in favor of the plaintiff under the evidence and the instructions of the court, then you will award him such sum as you find and believe from the evidence will fairly and reasonably compensate him for the injuries, if any, and damages, if any, sustained by him on the occasion in question; and, in arriving at the amount, if any, of your verdict, you may take into consideration and account:

"1. Such pain and suffering of body and mind, if any, as you may find and believe from the evidence plaintiff has suffered by reason and on account of his injuries, if any, sustained by him on the occasion in question.

"2. Such pain and suffering, of body and mind, if any, as you may find and believe from the evidence plaintiff is reasonably certain to suffer in the future by reason and on account of the injuries, if any, sustained by him on the occasion in question.

"3. Such distinct permanent injuries, if any, as you may find and believe from the evidence plaintiff will suffer by reason and on account of the injuries, if any, sustained by him on the occasion in question.

"4. Such loss of earnings, if any, as you may find and believe from the evidence plaintiff has suffered by reason and on account of the injuries, if any, sustained by him on the occasion in question, and for such future loss of earnings, if any, as you may find and believe from the evidence plaintiff is reasonably certain to suffer in the future by reason and on account of the injuries, if any, sustained by him on the occasion in question; not, however, at a greater rate than $2,163.56 per year for such aforesaid losses of earnings, if any."

Appellants object to this instruction, saying; that the petition alleged that respondent lost earnings at the rate of $180 per month while the instruction authorized the jury to award damages for loss of wages at a greater rate.; also that the instruction gives the jury a roving commission and positive direction to award compensation to respondent for all injuries *and* for all damages sustained by him, thus providing for a duplicated or double award.

We are not impressed with the first objection made to this instruction. The petition alleged that respondent earned *approximately* $180 per month. This would amount to $2,160 per year, which is the approximate amount mentioned in the instruction.

A similar instruction was approved, but not warmly commended, by the majority opinion in the case of Keehn v. Realty Co., 328 Mo.

1031, 43 S. W. (2d) 416. There was a strong dissent in that case by three judges based, in part, on the instruction. The majority opinion reached the conclusion that the instruction did not authorize an award of double damages. The dissenting opinion criticized the instruction because it was the only one requested by the plaintiff; (it being bad practice to instruct on the measure of damages only) and for the further reason that the evidence did not show that the plaintiff had "any injuries which can either now, or in the future, manifest themselves otherwise than by pain and suffering and a diminution of earning power." Neither of these criticisms apply to the instruction in the instant case, for the respondent did ask other instructions defining the issues, and did offer evidence of injuries which manifest themselves by objective symptoms, to-wit, a wasting away or atrophy and impairment of motion of the forearm and shoulder.

In Brunk v. Hamilton Brown Shoe Company, 334 Mo. 517, 1. c. 532, 66 S. W. (2d) 903, an instruction which authorized the jury to make an award for damage *and* injuries was approved over the objection that the instruction was too general and gave the jury a roving commission.

After careful study of the instruction in the instant case, we do not believe it should compel us to remand the case, but it certainly could have been more clearly worded. We do not think the first part of the instruction would lead a jury to believe they must make an award for respondent's *injuries* and then allow him an additional sum for *damages*.

The first paragraph, standing alone, might convey that impression, but, as it was followed by the different elements of damages to be considered, we think the jury should have had a fairly clear idea of their duty. However, as pointed out in the dissenting opinion in the Keehn case, supra, such an instruction should not be given unless the evidence justifies it. Also caution should be used to avoid any idea of a double award and Section 3 could be couched in clearer terms. That section names as an element of damages "such distinct permanent injuries, . . . plaintiff will suffer by reason and on account of the injuries."

Appellants complain of the court's refusal to give instruction "D" requested by them. This instruction would have told the jury, in substance, that admissions as to facts by the attorneys and statements and depositions admitted in evidence should be given the same credit as the testimony of witnesses appearing in person. Such is not the law. Admissions by the attorneys must be accepted as true; the credibility and weight of other statements are for the jury. For instance, in the instant case the attorneys admitted that defendants were engaged in interstate commerce. That dispensed with proof of that issue and made it unnecessary to even submit it to the jury.

(4) *Amount of verdict.* Respondent was 48 years of age at

the time of his injury and for the previous calendar year had earned $2,163.56 as a switchman. He was thrown from a height of about 14 feet and fell on a steel rail; he was rendered unconscious; his left arm was broken and he received injury to his side, back and shoulder. The use of his arm and shoulder was permanently impaired, to what extent the medical testimony is in conflict. At the trial he testified that he still suffered pain and there was testimony that he will suffer pain in the future. He was confined in hospitals for about three months. The verdict was for $20,000.

We have no gauge by which to measure the amount which any plaintiff should receive for personal injuries. We get little help from previous decisions, for the evidence in each case differs from all the others, but we can and do try to preserve some consistency in the amounts allowed. We have examined many cases involving allowances for injuries somewhat similar to those which the testimony shows in the instant case. In most, if not all, of them the amount as finally allowed was less than the verdict in the instant case. In Leighton v. Davis (Mo.), 260 S. W. 986, a 45 year old switchman recovered a verdict for $15,000 for injuries which required the amputation of an arm. We reduced the judgment to $12,000. In Rose v. Ry., 315 Mo. 1181, 289 S. W. 913, for the loss of his right arm plaintiff had judgment for $12,000 which we reduced to $10,000. In Sallee v. Ry., 321 Mo. 798, 12 S. W. (2d) 476, plaintiff suffered the loss of his left leg and was otherwise seriously injured. He had a verdict for $40,000, reduced to $30,000 by the trial court and further reduced by this court to $17,500. In the recent case of Yakubinis v. Ry., 345 Mo. 943, 137 S. W. (2d) 504, an 18 year old young man procured a verdict of $20,000 for very severe injuries to his side, serious impairment of one arm and nervous system. We reduced the allowance to $15,000. [See, also; Radler v. Ry., 330 Mo. 968, 51 S. W. (2d) 1011; Wolfe v. Payne, 294 Mo. 170, 241 S. W. 915; Sullivan v. Ry., 321 Mo. 697, 12 S. W. (2d) 735; Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S. W. (2d) 865; Spencer v. Ry., 317 Mo. 492, 297 S. W. 353; Midwest Natl. Bank & Trust Co. v. Davis, 288 Mo. 563, 233 S. W. 406.]

Respondent cites the case of Schroeder v. Wells (Mo.), 298 S. W. 806, in which we sustained an award of $17,000 for injuries to a 35 year old carpenter, resulting in the loss of the use of his left arm. Respondent also cites many cases from other jurisdictions. From an examination of all the cases cited, we conclude that the judgment in the instant case is excessive to the extent of $5,000.

If, therefore, respondent, within ten days, will enter a *remittitur* of $5,000 upon the judgment of $20,000, the judgment of the trial court will be affirmed in the sum of $15,000 as of the date of the judgment in the circuit court; otherwise the judgment for $20,000 will be reversed and the cause remanded. All concur.