Georgea Belle Van Campen, Respondent, v. St. Louis-San Francisco Railway Company, a Corporation, Appellant.—No. 40760.—216 S. W. (2d) 443.

Division One, December 13, 1948.

Rehearing Denied; January 7, 1949.

M. G. Roberts, C. H. Skinker, Jr., Roscoe Anderson and Cullen Coil for appellant.

656

*Everett Hullverson* for respondent; *Forrest Boecker* of counsel.

658

[444] DALTON, C.—Action for damages for personal injuries alleged to have been caused by defendant's negligence. Verdict and judgment were for plaintiff for $25,000 and defendant has appealed.

Plaintiff, a passenger on one of defendant's trains, was injured February 7, 1947, when the car in which she was riding left the track near Republic, Missouri, and turned over on its side.

Error is assigned on the argument to the jury; the giving of instruction No. 4; and an alleged excessive verdict. Appellant first contends the court erred in permitting plaintiff's counsel in his argument to the jury to read from the pleadings in the case and to base an argument thereon and in failing to strike the argument and instruct the jury to disregard it.

The action was based upon a charge of general negligence under the res ipsa loquitur doctrine. Defendant admitted that plaintiff was a passenger on its train when the train left the track, but denied the allegations concerning defendant's negligence, plaintiff's injuries and that the injuries were caused by defendant's negligence. The cause was submitted under the res ipsa loquitur doctrine and, at defendant's request, the court instructed the jury that the burden of proof rested upon plaintiff to prove that defendant was negligent and that such negligence, if any, caused injury to plaintiff.

Defendant's counsel, in his argument to the jury, stated: "Now, I want to tell you that the Frisco Railroad didn't try to claim that they weren't liable for the injuries to this woman . . . And, ladies and gentlemen, we want to pay her a reasonable amount . . .

We are not contesting the question, we didn't put on any evidence to show, that it wasn't our fault that this train went off the track. . . . We didn't do it . . . because we want to pay our passengers when we are so unfortunate as to hurt them." .

In reply, plaintiff's counsel stated: "And counsel says they never denied; they never made any contention that they weren't to blame. Well, let the record of the court dispel that." Thereupon, counsel read the allegation of negligence, proximate cause and injury in the petition and the denials in the answer. The objection made and overruled was that "We ought to keep the pleadings from the record. The pleadings are for the court and not for the jury. . . . I object to any reading from the petition. It certainly couldn't be any admission on the part of the defendant." Defendant then moved that the argument that "they admitted that it left the track, but they denied they were negligent" be stricken and the jury be instructed to disregard it. The motion was overruled. Thereafter, without further objection by defendant, plaintiff's counsel discussed defendant's efforts "to soft-soap" the jury and to ask mercy and kindness, after requiring plaintiff to prepare for trial on the issues presented, and concluded as follows: "After they are caught in the act they admit that they are guilty."

Appellant says the pleadings were not in evidence and "the argument, based on a presentation of the contents of said pleadings to the jury, injected a false issue into the case, was highly prejudicial to appellant and biased and prejudiced the jury against appellant in that it tended to and did arouse hostility, prejudice, and resentment toward appellant." Appellant says the false issue was "whether defendant, in its answer, denied that it was negligent." Appellant insists that plaintiff's counsel "proceeded to make a most prejudicial argument based upon the denial of the negligence contained in the pleading."

It is generally held that abandoned pleadings can not be read or commented on unless formally introduced in evidence. Wahl v. Cunningham, 332 Mo. 21, 56 S. W. (2d) 1052, 1059. In the present case the pleadings read had not been abandoned and there was no objection that they [445] were not in evidence. It has often been held that the pleadings, as here, are for the court and not for the jury. Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903, 907; Gorman v. St. Louis Merchants' Bridge Terminals R. Co., 325 Mo. 326, 28 S. W. (2d) 1023, 1025. Reading the pleadings to the jury, however, does not of itself constitute reversible error, unless it appears that the jury was confused or misled, or that the reading of the pleadings operated to prejudice the rights of the opposing party. Kirkpatrick v. Wells (Mo. Sup.), 51 S. W. (2d) 36, 38; Brunk v. Hamilton-Brown Shoe Co., supra.

In this case there was nothing in the pleadings to confuse or mislead the jury. The issues made by the denial of general negligence, injury and causation were simple and easily understood. The parts of the pleadings read and the argument made was solely in answer to the argument of defendant's counsel. The argument was not directed to the denial in the answer, but to the argument and that there had been no denial of liability. There was no conflict between the pleadings and the instructions of the court. The instruction, requested by defendant and given by the court, that the burden of proof was on plaintiff to show defendant was negligent and that such negligence, if any, caused injury to plaintiff, was consistent with defendant's denials. We may concede that the argument of plaintiff's counsel and the reference to the pleadings effectively answered the argument and statements of defendant's counsel, but we find no reversible error; since the defendant may not take advantage of its own wrong in going outside of the evidence and issues to gain favor with the jury by making statements contradicted by the pleadings, the record and its own requested instruction. Plaintiff's counsel was entitled to make a reasonable reply without having it made the basis of error. See Wheeler v. Missouri Pac. R. Co., 322 Mo. 271, 18 S. W. (2d) 494, 497; Rainier v. Quincy, O. & K. C. R. Co. (Mo. Sup.), 271 S. W. 500, 506. The reply in this case was not based upon matters wholly outside the evidence, the issues and merits of the controversy before the jury, as in Walsh v. Terminal R. Ass'n. of St. Louis, 353 Mo. 458, 182 S. W. (2d) 607, 612; Better Roofing Materials Co. v. Sztukouski (Mo. App.), 183 S. W. (2d) 400, 403; and Amsinger v. Najim, 335 Mo. 528, 73 S. W. (2d) 214, 216. We find nothing in the record to lead us to believe that the jury was confused or misled by the pleadings; that the reading of the pleadings operated to the prejudice of defendant, authorizing a reversal; or that counsel for plaintiff made more than a reasonable reply to the argument of defendant's counsel. Ingram v. Prairie Block Coal Co., 319 Mo. 644, 5 S. W. (2d) 413, 418; Kirkpatrick v. Wells, supra; Brunk v. Hamilton-Brown Shoe Co., supra; Wheeler v. Missouri Pac. R. Co., supra. No abuse of the trial court's discretion appears from the record. Kelley v. Illinois Central R. Co., 352 Mo. 301, 177 S. W. (2d) 435, 442.

Instruction No. 4 told the jury that "if you find . . . in favor of the plaintiff, then in assessing her damages you will allow her such sum as you find and believe from the evidence will fairly and reasonably compensate her: (1) For such loss of wages and earnings, if any, you may find from the evidence plaintiff has suffered by reason and on account of the said injuries, if any, suffered on the occasion in question, not, however, to exceed the sum of $250.00 per month for such loss of earnings, if any, *and for such future loss of earnings, if any.* . . . (5) For such distinct permanent in-

juries, if any, plaintiff *will suffer* by reason and on account of the injuries, if any, sustained on the occasion in question." (Italics ours).

Appellant contends that the instruction fails to limit recovery for future loss of earnings to such loss of earnings as are directly attributable to the injuries suffered by respondent and wholly fails to require any finding of causal connection between such loss and the injuries received. If the instruction does not limit recovery for loss of future earning to those directly attributable to the injuries sustained on the occasion in question and require a finding of causal connection, it is erroneous. Kelly v. Kiel (Mo. App.), 117 S. W. (2d) 1086; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55; 62. In the O'Leary case, a somewhat similar instruction [446] was held bad in view of the peculiar facts in that case. No such facts exist in this case. While the instruction should have been in better form, yet in view of statements which immediately precede the clause in question and the use of the word "such" in connection with the words "future loss of earnings," we are of the opinion that the instruction would be understood by the jury as limiting recovery for both past and future loss of earnings to such loss as shown by the evidence to have been suffered "on account of the said injuries, if any, suffered on the occasion in question." Brunk v. Hamilton-Brown Shoe Co., supra (66 S. W. (2d) 903, 909; Cunningham v. Doe Run Lead Co. (Mo. Sup.), 26 S. W. (2d) 957, 960.

Appellant further contends that subdivision 5 of the instruction is not supported by evidence; that there was no evidence of compensable permanent injuries that could manifest themselves by objective symptoms; and that subdivision 5 permits the jury to assess double damages for future pain and suffering (covered by subdivision 4). Appellant argues that the only evidence of premanent injury to plaintiff was that the left wing of the ilium was flattened on top, rather than being dome shaped as before; that such injury is not compensable, since it could not cause future trouble, or interference with plaintiff's appearance or activity; and that, inasmuch as the only distinct permanent injury, which could possibly manifest itself other than by pain and suffering, was not a compensable injury, it was error to permit the jury to award damages for distinct permanent injuries. Appellant says "it is very doubtful . . . that the fact that the crest (of the hip bone) has lost its 'dome shape' can be called a permanent injury within the principles of the law of damages." Both parties rely upon Wild v. Pitcairn, 347 Mo. 915, 149 S. W. (2d) 800, 804; and Meierotto v. Thompson, 356 Mo. 32, 201 S. W. (2d) 161, 166.

In this case, the trial was had within eight months after the injuries were received. When plaintiff was admitted to the hospital, X-ray films indicated "a comminuted fracture of crest of left ilium

with one and one-half inch depression downward and forward.'' There was something like one inch displacement and the fracture and: ramifications extended three and one-half to four inches, extending from where the bone was approximately an inch thick to where it was one-eighth of an inch in thickness. The fracture had healed prior to the trial and the bone was in good alignment, not perfect. External measurements, taken with a ruler, showed that the crest of the left ilium was an inch and a half lower than the right one. The crest of the bone, instead of having a rounded dome as normal, now appears depressed and flattened at the top and it has been shortened approximately an inch and a half. There was evidence that ''so far as the depression of the left crest of the ilium is concerned, that is fixed and permanent.'' At the time of examination plaintiff walked ''with a slight not exactly a limp but a slight restraint favoring her left hip.'' While there was no evidence that the permanent injury to the left ilium would cause future pain and suffering or that it would in anywise affect plaintiff's future earnings, yet it was a permanent injury to her person clearly manifesting itself ''otherwise than by 'pain and suffering and a diminution of earning power'' and recovery of damages could be had therefor. Wild v. Pitcairn, supra; Meierotto v. Thompson, supra; Baker v. Chicago, B. & Q. R. Co., 327 Mo. 986, 39 S. W. (2d) 535, 545; Tash v. St. Louis-S. F. R. Co., 335 Mo. 1148, 76 S. W. (2d) 690, 699; Keehn v. D. R. F. Realty & Inv. Co., 328 Mo. 1031, 43 S. W. (2d) 416, 417; Rosenkranz v. Lindell R. Co., 108 Mo. 9, 15, 18 S. W. 890; Brickey v. St. Louis Merchants' Bridge Terminal R. Co. (Mo. Sup.), 259 S. W. 476, 480. This evidence alone was sufficient to support subdivision 5 of the instruction.

Appellant also contends that subdivision 5 of the instruction fails to limit the jury to an award for permanent injuries which respondent *has suffered* as distinguished from permanent injuries which respondent *might suffer* in the future, thereby permitting the jury to speculate on possible permanent injuries which could develop in the future. Appellant says that, if an injury sustained is permanent [447] in nature, then it has been sustained and is an existing fact; and that plaintiff either had distinct permanent injuries or she did not have such distinct permanent injuries. In this connection the evidence tended to show that some of the injuries sustained and existing at the time of the trial would not necessarily be permanent. For instance Dr. Fred C. Reynolds testified that the cause of the pain in plaintiff's back and leg of which she complained was due to a ruptured intervertebral disc between the fifth lumbar vertebra and the sacrum; that the outside of the disc was a tough fibrous tissue while inside was a fibro-cartilagenous material known as the nucleus pulposus; that, when the covering that surrounds the disc is torn, the soft material inside pushes out and presses on nerve roots

to produce pain; and that, while he anticipated that plaintiff would get well and that an operation would be unnecessary, there was no way. to tell and it was too early to tell what the ultimate result would be.. If the disc did not heal and the pain continued, a major operation would be necessary to remove the part of the disc, which had been. pushed back. Another witness, Dr. F. G. Pernoud said: "The disc injury is problematic; she may get well and she may not." The type. and kind of injury and the probability of recovery was fully shown by the evidence. Somewhat the same situation existed concerning the damage to plaintiff's left sacro-iliac joint—where, after the facts. were fully shown, Dr. F. G. Pernoud testified: "So far as the damage. to the left sacro-iliac joint, in my opinion, she will have more or less. trouble of a decreasing nature through the rest of her life, and I think because of the damage to the soft structures about her lower back and pelvis that she will have some pain and disability through the remainder of her life." The extent to which the injuries to the intervertebral disc and the sacro-iliac joint would be permanent was; for the jury to determine under all of the evidence. The ultimate determination of the extent of permanency of these injuries was in the future. The instruction was not erroneous or misleading in the use of the words "will suffer" and their use did not permit the jury "to. speculate on possible permanent injuries which could develop in the. future." The injuries were shown by the evidence and the instruction limited the jury to the evidence. Plaintiff was entitled to recover under this part of the instruction for such physical injuries as the. jury found would be permanent. Wild v. Pitcairn, supra; Keehn v. D. R. F. Realty Co., supra. If in defendant's opinion the instruction needed clarification, it should have submitted a clarifying instruction. Coleman v. Rightmyer (Mo. Sup.), 285 S. W. 403, 406; Brunk v. Hamilton-Brown Shoe Co., supra; Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 31 S. W. (2d) 50, 64. The assignment is overruled.

Was the verdict grossly excessive and so excessive as to indicate bias and prejudice on the part of the jury? In determining this issue we must consider the evidence and inferences favorable to the verdict and disregard conflicting testimony.

Plaintiff was an unmarried woman 36 years of age, residing in Chicago, Illinois, where she had been employed as the manager of the office of a manufacturer's representative at a salary of $250 per month. Her duties included typing letters, preparing advertising sheets and looking after correspondence. She had been unable to work and had earned no money from the time she was injured until the time of the trial. As a result of her injuries, she had expended some $1406.75 for hospital, nurses, medical and surgical expenses, and additional expenses would be required. Prior to her injuries her

health had been good. After leaving the hospital, she had remained at her home and was complying with her doctor's directions as to diet and rest.

In addition to the evidence of injuries, as hereinbefore set out, the evidence tended to show that plaintiff was unconscious for a time immediately prior to her removal from the overturned car. When she was removed, she was suffering from pain and shock and she was taken to a hospital at Springfield, Missouri. Her body was bruised from her shoulders down to her hips and there was swelling, tenderness and discoloration. Her left ankle was cut and bruished, her legs hurt and, on her back, [448] there was one particularly large bruise, which she was told not to rub on account of the danger of blood clots. X-ray examination showed the fracture and displacement of the left wing of the ilium, as heretofore mentioned. The hospital records further showed a moderately severe sprain of the left ankle, with pain, disability, swelling and abrasions. Plaintiff was placed on a Bradford frame, with her "body in a forced backward flexion position," where she remained for five weeks. During this period she did not have normal bowel movements and for almost one week she was unable to pass urine normally. She remained in the hospital for 79 days and suffered pain all of the time. Her left ankle also hurt and she had had headaches, which continued to the time of the trial.

When she left the hospital her whole back was very tender, her left side was sore and remained so to the time of the trial. She also suffered with occasional shooting pains from her back down to her knees and there was always dull pain. Some years prior to her injury she had had a menstrual disturbance as the result of a cold that settled in an ovary, but she became normal within four months. After she was injured, she again suffered from menstrual irregularity and the condition had not improved. At the time of the trial she was unable to rest well at night or to sleep on her left side. She was often awakened by pain. Her back still bothered her, her leg throbbed and she had sharp pains. In the hospital she was given "pain-killers and sleep-producing pills," but she now takes aspirins.

Plaintiff was able to be up and walk around before she left the hospital and to go out in the yard. On her way home from the hospital, she was able to stop in St. Louis and to walk from a taxicab to an elevator and to visit her attorney's office and the office of her medical witness. Within about a month after her return home, she consulted her physician and he gave her medicines for an anemic condition, which had first existed in 1936, after the removal of her appendix. The anemic condition was also found to exist in 1941 or 1942. Plaintiff had had chronic sinus for ten years and had taken some treatments, but she had had only occasional headaches.

Dr. Fred C. Reynolds testified concerning his findings upon examination of plaintiff, towit, "that she had pain in the back on motions of the spine; that there was some limitation of motion of the spine; that there was tenderness in the lower part of the spine, particularly on the left side, that is, the fourth and fifth lumbar vertebrae; also, that the test we speak of as straight leg raising was limited and it produced pain in her back." He found that the fracture of the pelvis had healed, but with some displacement; that the cause of her pain in her back and leg, of which she complained, was due to an injury to an intervertebral disc between the fifth lumbar vertebra and the sacrum; and that such an injury could be caused by a train wreck. His diagnosis and opinion of a herniated disc was based on plaintiff's recital of pain "and other findings that fit in." It was his opinion that plaintiff would recover without an operation. He said the X-ray pictures did not show any involvment of the juncture of the sacrum and the ilium; and that they were in perfect alignment in his opinion. He further stated that the pain resulting from a herniated disc would not likely occur until after the injured person became ambulatory. He was of the opinion that, even with an injury of the kind suffered by plaintiff, that "after the pain subsides, either from healing over of the disc or from an operation," she would be able to engage in useful occupations requiring the use of the back.

Dr. Pernoud testified that he found that plaintiff had tenderness on pressure over her lower lumbar and lumbo-sacral region and over the left sacro-iliac joint; that the spinal muscles were somewhat tense and rigid in the lower lumbar region, indicating some pull or restraint so as to fix the lower back; that there was some limitation of the left leg flexion; and that straight leg flexion and pressure on her back caused a radiation of pain down into her hip. It was his opinion that plaintiff had a herniated nucleus pulposus between the fifth lumbar vertebra and the sacrum bone. He said the X-ray pictures showed a definite fracture line transversely across the iliac [449] bone and another fracture line running higher and entering the left sacro-iliac joint. The X-ray pictures further showed a mottled area, where the fracture line entered the sacro-iliac joint, indicating either some inflammatory condition in the joint or else some fine bone formations present. Such a fracture in the joint would cause pain and, if the pain continued, the only thing that could be done would be to operate and seal the joint off and make a fixed joint. In his opinion the disc injury was serious because the injury permitted the jelly-like substance of the disc to be pushed backward into the spinal canal and impinging nerve roots by pressure and cause lots of pain. He said that plaintiff had not experienced "even the average amount of pain that people have with a herniated disc," but he thought she had considerable pain about her left sacro-iliac joint and lower back. He

recommended that she wear a rather strong corset brace around the pelvis and upward; and that she be under the supervision of a physician. He further testified that an injury to the body accompanied by great force, severe fright and nervousness would cause a menstrual disturbance, which would correct itself when the nervousness was overcome, however, the frequent abnormal menstruation over a long period of time would tend to produce a secondary anemia, aggravate an already pre-existing condition, and tend to devitalize every single physiological function of the body, including the mind. He found all of her generative organs in normal position and shape, except that the uterus was longer than normal. Ordinarily, plaintiff's injuries would not cause trouble in child birth, but she would suffer more pain because of the injury to the sacro-iliac joint. The witness's conclusion as to the permanency of plaintiff's injuries have already been stated.

There is no accurate scale for measuring the money value of the damages sustained. Each case must be considered upon its own peculiar facts, giving some consideration to economic conditions (the decline in the purchasing power of the dollar) and having regard to a reasonable uniformity of awards. Joice v. M.-K.-T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568, 577; Young v. Terminal R. Ass'n. (Mo. Sup.), 192 S. W. (2d) 402, 409; O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. (2d) 1085, 1093. The verdict is not so grossly excessive as to show passion and prejudice, but considering the evidence in a light most favorable to plaintiff the verdict is grossly excessive and is excessive as compared with other verdicts which have been permitted to stand on appeal in cases of somewhat similar injuries. We think the verdict is excessive by $10,000. Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, 659; Carpenter v. Wabash R. Co., 335 Mo. 130, 71 S. W. (2d) 1071, 1075; Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S. W. (2d) 883; Brunk v. Hamilton-Brown Shoe Co., supra; Webb v. M. K. & T. R. Co., 342 Mo. 394, 116 S. W. (2d) 27, 30; Williamson v. Wabash R. Co., 355 Mo 248, 196 S. W. (2d) 129, 133. We will not set out the injuries in these cases since to do so would unduly extend this opinion.

If plaintiff will, within ten days from the date of filing this opinion, enter here a remittitur of $10,000, the judgment for $15,000, as of the date of the original judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded because of an excessive verdict. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. *Clark, Conkling* and *Hyde, JJ.,* concur. *Douglas, P. J.,* concurs except as to order of remittitur. He believes the judgment should be reduced only by $5,000.