252 S.W.2d 116 (1952)
HIEBER
v.
THOMPSON.
No. 21684.
Kansas City Court of Appeals, Missouri.
October 6, 1952.
*117 *118 Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Kansas City, for appellant.
C. R. Leslie, Arthur C. Popham, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for respondent.
DEW, Judge.
The respondent, referred to hereinafter as the plaintiff, brought this action to recover damages alleged to have been sustained in a collision at a railroad crossing in Nevada, Missouri, between an automobile in which she was a guest and a locomotive owned and operated by the defendant. The verdict and judgment were in the plaintiff's favor in the amount of $7500, from which defendant has appealed.
Several assignments of primary negligence were pleaded in the petition, together with a plea on the humanitarian theory, but the cause was submitted on primary negligence only, consisting of failure to warn, excessive speed and failure to maintain a lookout. The answer was in the nature of a general denial of the controverted facts and a defense that if plaintiff sustained any injuries at the time in question, "the negligence of plaintiff's son in driving said automobile, and of the. plaintiff's own negligence directly contributing, caused or directly contributed to cause said injuries."
Plaintiff adduced evidence to the effect that she, a widow 65 years of age, was, on June 4, 1949, at 5:30 p.m. riding as a guest in a Hudson automobile with her son Elroy, who owned and was operating the car. Plaintiff had nothing to do with the driving, operation or control of the car in which she was riding. The weather was fair. They were going westward on Hickory Street in Nevada, Missouri, at a point where usually the traffic is very heavy at that `hour of the day. The car was approaching *119 a railroad crossing, consisting of several tracks which ran north and south at grade over and across Hickory Street and which were used by the defendant trustee for the railroad. Plaintiff claims that the crossing was unusually dangerous and hazardous. A flagman was provided at the crossing between the hours of 8:00 a.m. and 5:00 p.m. None was present at the time in question. Plaintiff and her son were familiar with the railroad crossing. As they approached within 50 feet of the crossing, plaintiff looked and saw no moving trains, but saw a locomotive about 100 feet south of Hickory Street, apparently standing still on one of the several tracks. The automobile was then traveling 15 to 20 miles an hour and when within 50 feet of the crossing, was slowed to 5 or 6 miles an hour, later increasing its speed. No bells were sounded nor were there any wigwags, gates, or warnings of any kind of the approach of the locomotive. One of the written operating rules of the defendant was that " * * * The engine bell must be rung when an engine is about to move and while approaching and passing public crossings at grade * * *". Nearing the crossing "quite a ways back", plaintiff asked her son if he thought he could make it and he answered: "I think we can make it." Plaintiff added: "It looks like you could make it, you know". The son looked to the right and left and saw no moving trains, but saw the locomotive standing on the track about 75 feet south. The automobile was missing in one cylinder and making noise. When within about 8 or 10 feet of the track the son heard the "chug" of the locomotive moving toward him and about 10 or 12 feet from him, and, fearing he could not stop in time, he "gunned" his motor and shifted into second gear. His car did not respond to acceleration. While crossing the track the automobile was struck by defendant's locomotive, a switch engine drawing several freight cars, coming from the south, and the automobile was pushed northward down the track 70 to 75 feet, seriously injuring the plaintiff.
According to defendant's evidence, the automobile approached the crossing at about 15 to 20 miles an hour and when within 20 to 30 feet from the track, slowed down to 6 or 7 miles an hour as if to stop, and then its motor was suddenly speeded up until the point of collision. Defendant's witnesses testified that the bell on the locomotive, operated by air, was started before the engine began to move toward the crossing, and was not turned off until after the collision. They said the locomotive had started from a momentary stop with its front about 60 feet south of Hickory Street, and it was going 5 to 8 miles an hour when the collision occurred, having gradually increased its speed from its start. The engineer had seen the automobile when the latter was 70 to 75 feet east of the track and it was slowing down. The locomotive was then within 10 feet of the street. The engineer looked back for signals from a switchman on a freight car attached and then heard the collision. When the locomotive entered Hickory Street the automobile was about 30 feet east of the track.
Defendant's first point is that the court erred in overruling his motion for a directed verdict offered at the close of plaintiff's evidence. This error, if any, was waived by the fact that defendant thereafter offered his own evidence on the issues involved. Porter v. Equitable Life Assurance Society, Mo.App., 71 S.W.2d 766, 772.
The second point is that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence (1) because there was no proof of negligence of the defendant which was the proximate cause of the collision and plaintiff's injuries, and (2) plaintiff was guilty of contributory negligence as a matter of law, which was the proximate cause of the injuries, because she acquiesced in, concurred with, and consented to the negligent act of her son, the driver and owner of the car, "to beat the train over the crossing".
Defendant admits in his brief that according to the evidence the locomotive started from a standing position about 75 to 100 feet south of the crossing. He asserts that there was no evidence that the *120 crossing was unusually dangerous nor that it was his duty to maintain the warnings demanded by the plaintiff. He contends that the failure to sound the bell or to give any other warning could not be the proximate cause of the collision since both the plaintiff and her son saw the engine at that point. Both of them testified that they had no knowledge that the standing locomotive would start moving without warning by bell or otherwise, and the son testified that he was within 8 or 10 feet from the track before he heard the noise of the approaching locomotive about 10 or 12 feet from him, and, fearing that he could not then stop his car in time, he tried to "gun" his motor, which did not respond sufficiently because of a missing piston. The locomotive, he said, was going about twice as fast as he was driving his car. We think, under the evidence, that it was a question of fact for the jury whether the bell or other warning was given, and if not, whether such failure was negligence, and proximately caused or contributed to cause the collision.
As to the speed of the locomotive there was evidence that it attained a speed from its starting point 75 to 100 feet south of the street of 12 to 14 miles an hour before the collision. There was other evidence that it attained a speed of 5 to 8 miles an hour. Whether such speed over the street crossing without warning or signals was negligence, and whether the same was a proximate cause, or a contributing cause of the collision were questions for the jury.
On the matter of failure to maintain a lookout ahead and laterally, there was evidence that when the engineer saw a car approaching the crossing about 75 feet east, and it appeared to be slowing up for a stop, he turned his head to the south or rear of his engine for signals from the switchman on one of the freight cars he was pulling, and paid no more attention to the approaching automobile. He traveled about 25 feet while looking back. He testified that he looked forward again at the moment of the impact. Thus there was substantial evidence of a failure to maintain a lookout and whether such failure was negligence and a proximate cause of the collision were also matters for the jury's determination.
Defendant further contends that plaintiff was guilty of contributory negligence as a matter of law. It is argued that she acquiesced in, concurred in, and consented to her son's negligent attempt to "beat the train over the crossing". An invited guest in an automobile must exercise ordinary care for his own safety. Nahorski v. St. Louis Elec. Term. Ry. Co., 310 Mo. 227, 274 S.W. 1025, 1027. He must protest, if given a reasonable opportunity, when the course of operation of the car is plainly negligent or violative of the law. Blashfield Cyclopedia of Automobile Law and Practice, Vol. 4, Part 1, pp. 563, 565. Considering the plaintiff's evidence in the light most favorable to her on this issue, we cannot say that under the law she stands guilty of contributory negligence, because there was proof that when she made the remarks charged to her the automobile was "quite a ways back" from the crossing, and after she had looked and had seen no moving trains, and had seen the locomotive in question at a standstill 100 feet south of the street, with no bells ringing nor any sign or other warning that the locomotive was about to start toward and across the street, she remarked, as had her son, that it looked like they "could make it". She said she did not think the engine would, start up without ringing the bell. Under such evidence her contributory negligence, if any, became a matter for the jury. Gorman v. Franklin, Mo.Sup., 117 S.W.2d 289; Doyel v. Thompson, 357 Mo. 963, 968, 211 S.W.2d 704; Jackson v. Southwest Missouri, R. Co., Mo.Sup., 189 S.W. 381. The court properly overruled defendant's motion for a directed verdict at the close of all the evidence.
Defendant next urges error by the trial court in overruling his motion to quash the jury panel because 51 jurors had been excused by the judge, and the jury in this case was thereby caused to be selected from 20 men and 2 women out of the 73 served and qualified for service. The record shows that the court drew 120 names of jurors for the week in which this cause *121 was tried. Of these, 105 were actually summoned, reduced to 102 by deferments; of these, 23 women and 6 men were excused for statutory reasons, leaving 73 qualified to serve. Later the judge released or excused 51 men, leaving 22 for jury service. The panel of 18 from which the jury in this cause was chosen, was drawn from the above 22 jurors. It is claimed that the court abused its discretion in excusing 51 jurors without statutory excuses and in Keeping for service only those willing to serve. Defendant does not point out in his brief wherein the judge violated any provisions of the statutes as to the manner of excusing jurors, nor wherein defendant was prejudiced by the excuse of members summoned to serve, nor wherein the qualification of the panel from which the jury herein was chosen was affected by the discharge of other jurors personally by the trial judge. 3 Am.Jur. p. 600, Sec. 1050; Sections 497.160, 497.170 RSMo 1949, V.A.M.S. No such situation here existed as in the late case of State v. Thursby, Mo.Sup., 245 S.W.2d 859, where the selection of those excused was delegated to the deputy sheriff. The point is overruled.
The defendant charges error in the refusal of the court of defendant's challenge of juror Mrs. Leona Taylor for cause. Mrs. Taylor was a member of the panel of 18 jurors from which the jury here in question was chosen. Upon inquiry by defendant's counsel if any member of the panel knew of any reason why he should not sit in the case, Mrs. Taylor stated that her husband "had an accident once with the Missouri Pacific Railroad Company"; that it was in 1928, and the matter had been disposed of, and that there was nothing about that incident that would cause her any difficulty in this case. Answering questions by the plaintiff's attorney she said that there had been no lawsuit; that her husband had been killed in a crossing accident; that he was not an employee of the railroad; that she did not have to make a claim nor hire a lawyer, but the defendant "came out and made a settlement with me" that was fair and honest, with which she was perfectly satisfied. Thereupon defendant's counsel challenged Mrs. Taylor for cause, citing the accident to her husband above described. The court said: "I do not like to get jurors tied in too closely with matters of this kind. On the other hand, I can see the position of the defendant. The motion will be overruled". The point was preserved in defendant's motion to set aside the verdict and for new trial, and again on this appeal.
Defendant attributes to the court's remarks an indication of the court's approval of jurors with leanings toward the plaintiff. We find no justification for the construction placed on the language of the court by the defendant, as the remarks have reference to this one juror only, and the meaning apparently intended to be conveyed was that not every past transaction, incident or relationship between jurors and litigants was ipso facto a disqualification, but that it was not desirable to retain a juror whose judgment would thereby be influenced in the case to be adjudged by such juror.
But defendant further contends that it was the court's sworn duty to provide a jury in the case wholly disinterested and free from prejudice against either party; that to force the defendant to try his case before a juror whose husband had been killed in a crossing accident by the same railroad as sued in the present crossing case through its trustee, even though she said the claim was settled to her satisfaction and that such incident would not "cause her any difficulty" in this case, was an abuse of discretion; that the court allowed the juror to pass on her own qualifications under facts which plainly called for the simple order excusing the juror for cause.
It was said in Lee v. Baltimore Hotel Co., 345 Mo. 458, 463, 136 S.W.2d 695, 698, 127 A.L.R. 711: "The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, `the right to a fair and impartial jury.' * * * Certainly it is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to accomplish that purpose by enforcing the qualifications prescribed by statute. Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. *122 Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men." "Trial courts have a wide discretion in supervising the selection of jurors, and the exercise of this discretion will not be interfered with unless clearly abused." Rose v. Sheedy, 345 Mo. 610, 612, 134 S.W.2d 18, 19. The above general rules are too familiar to require other citations.
The question of a juror's qualifications is one for the court, not for the determination by the juror. Nor is the conclusion of the trial court conclusive. Its discretion on the question may be reviewed. Where the prejudice is admitted by the juror, a deference to the trial court in qualifying him should not prevail over the demands of the law. Theobald v. St. Louis Transit Co., 191 Mo. 395, 90 S.W. 354, 359. But, "So much depends upon the manner of the juror and his tone of voice, and the opportunities of the trial judge to see and know the jurors, that it has become the settled practice of this court not to interfere with his finding unless it is manifest he has erred. The competency of [a juror is] a question of fact and the finding of the circuit court will not be disturbed unless clearly against the evidence. [Citations.]" Ruschenberg v. Southern Elec. Railroad Co., 161 Mo. 70, 87, 61 S.W. 626, 630. This policy was thoroughly discussed and approved in Parlon v. Wells, 322 Mo. 1001, 17 S.W.2d 528. In Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548, a case for personal injuries against a street railway, one juror on voir dire, said he once had a claim against a railroad on account of the death of his son and daughter-in-law, but that a satisfactory settlement had been made, and that the experience would not influence his verdict. On the authority of the Parlon case, supra, the Supreme Court declined to disturb the qualification of the juror by the trial judge.
In the case at bar there was no admission or expression by the juror that her husband's fatal accident 23 years prior to the trial of this case would prejudice her in the present case, nor was there other direct evidence to that effect. On the contrary, she said the accident to her husband would not cause her "any difficulty here at all one way or another," and expressed complete satisfaction with the time, manner and amount of the settlement made her by the railroad in question. On this record, plus the court's opportunity to see and hear the juror under examination, the court, in its discretion, overruled the defendant's challenge of her for cause. The question before us is whether on the same record, and without the opportunity to see and hear the juror on voir dire, it is manifest that the court erred in qualifying the juror over the challenge. Certainly, the record alone would not justify this court in declaring the juror unqualified as a matter of law. If not, then the record is not sufficient on which to base our determination that the court manifestly abused its discretion in overruling the challenge. To do so would have to be on grounds not appearing in the record before us. Under that record we decline to rule that the court abused its discretion in overruling defendant's challenge of juror Leona Taylor for cause. We do not wish to be understood to discourage the exercise of that extreme care in the qualification of jurors that a trial court should employ in the interest of justice and impartiality. That solemn duty of the court should never be relaxed, whether in the interest of expedition, convenience, economy or otherwise.
Defendant complains of plaintiff's Instruction 1. It reads as follows:
"The court instructs the jury if you believe from the evidence that plaintiff at all times used due care and if you find she was injured as a direct result of said collision and if you find that defendant on June 4, 1949, was operating said locomotive and that at and prior to said time defendant and the Katy Railroad were using said Hickory Street crossing and the tracks thereat for the operation of their trains and if you find that same at said times was a heavily and greatly used public grade crossing in the city of Nevada by *123 vehicular traffic and the general public and if you find that said crossing as maintained at the time of said collision was an unusually and extraordinarily dangerous and hazardous crossing for such public use and if you find that defendant in the use of due care should have maintained a crossing flagman thereat at said time or wigwags or bells or gates or other precautions for giving warning of the approach of trains for the reasonable safety of the public using said crossing and if you find defendant failed to use due care so to do;
"And if you further find that an operating written rule of defendant offered in evidence was then in effect requiring the engine bell on said standing engine to be rung before said engine was started in forward motion, and if you find that on said occasion defendant failed so to do and if you find defendant thereby failed to use due care;
"And if you further find that as said engine approached and neared said crossing on said occasion defendant suddenly and dangerously and unusually increased the speed thereof and failed to have and keep said engine bell ringing and gave no warning of the approach thereof to said crossing and if you find defendant failed to use due care to warn those in said car of the intended movements of said engine and the proximity of their danger, if any, from the movements of said engine;
"And if you find that as said engine at said time neared said crossing defendant failed to use due care to continuously keep and maintain a lookout ahead and laterally to the east;
"And if you find that the aforesubmitted failures of defendant to use due care directly caused or directly contributed to cause said collision, then your verdict will be for plaintiff Mrs. Hieber."
Defendants asserts that the foregoing instruction erroneously submitted in the alternative, failure to maintain a crossing flagman, or failure to maintain wigwags, or failure to maintain crossing bells, or failure to maintain gates, or failure to maintain other precautions for giving of warning. He further argues that there was no evidence of defendant's duty to supply any of the warnings mentioned, and that the absence of same could not have been the proximate cause of the collision; and contends that none of the methods of warning could have conveyed any information to the plaintiff which she did not already have by having seen the locomotive on the track south of the street. We have already passed on the submissibility of the absence of the methods of warning mentioned, the duty to provide same, and the issue of proximate cause as to each. The petition also charges that no warning whatever was given of the approach of the engine. The instruction requires the jury to find not only that none of the methods of warning mentioned was provided, but that no warning of any kind of the movement of the locomotive was given, and that it was the duty of the defendant, in the use of due care, to provide one or more of such methods, or some method of warning of its approach, and that such failure directly caused or contributed to cause the collision, as to all of which there was substantial evidence. We believe the instruction submits but a single duty as to the warning of the approach of the engine, and cannot be understood as requiring that all the methods mentioned be provided. Toeneboehn v. St. Louis-San Francisco Rd. Co., 317 Mo. 1096, 1116, 298 S.W. 795. A similar instruction was reviewed by the court in Smallwood v. St. Louis-San Francisco Ry. Co., 217 Mo.App. 208, 225, 263 S.W. 550, wherein this court held the instruction placed a greater burden on the plaintiff than the law required, since it required the jury to find that no warning whatever was given. We find no error in Instruction 1.
Defendant complains of plaintiff's Instruction 2, which was as follows:
"The Court instructs the jury if you believe from the evidence that Mrs. Hieber on the occasion in question was *124 riding as a guest passenger in said car by invitation of its driver and that she had no control over the operation thereof and nothing whatever to do with the driving thereof then the negligence, if there was any, on the part of the driver Elroy Hieber is not legally imputable or chargeable to her, and if you find that defendant was negligent as submitted in Instruction 1 and thereby directly contributed to said collision then the further fact, if you should find it to be a fact, that Elroy Hieber was negligent and thereby directly contributed thereto, would constitute no defense whatever on the part of defendant in this action by Mrs. Hieber vs. defendant for injuries and damages allegedly sustained by her."
It is claimed that this instruction erroneously injected into the case the false issue of contributory negligence of plaintiff's son, who was the driver and owner of the car in which she was riding; that the instruction conflicts with defendant's defense of "no negligence" submitted by the defendant and on which he had the right to rely; that if defendant was guilty of no negligence, the necessary result is that the collision was caused solely by the negligent operation of the car. The question arises whether the defendant in this case had a right to rely upon the defense of "no negligence" only, and thereby to preclude the right of the plaintiff voluntarily to submit to the jury the issue of her contributory negligence. The defendant himself first injected the issue of contributory negligence, direct and imputed, in his answer. Both sides adduced evidence on the subject. It is true that the defendant offered no instruction on it but this could not prevent the plaintiff from submitting it, when it was still an issue under the pleadings and on which considerable proof had been introduced.
In State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, 240, the pleadings were sufficient to submit the issue of contributory negligence. Plaintiff's instruction in that case based recovery for negligence on violation of a speed ordinance. It authorized the jury to render a verdict for plaintiff on that hypothesis if it further found that the deceased used ordinary care, even though the jury found that a third person, the driver of a truck who was not sued, was negligent and that such negligence, combined with that of the defendant railroad and its motorman in producing the death of the deceased. To such instruction it was added that if the jury so found the facts "`any act of negligence, or want of care, on the part of the driver of said truck in driving said truck into the path of said train would constitute no defense as to the defendants in this action.'" The Supreme Court said, 143 S.W.2d at page 240: "The instruction simply presented the proposition that notwithstanding the negligence of a third party may have combined with that of the defendant the latter would not be excused. Since it was conditioned on a jury finding that the defendants were negligent, it is not open to the criticism that it excluded consideration of the truck driver's negligence as the sole cause of deceased's death. If the jury had found the defendants were not negligent they still could have found the truck driver's negligence alone caused the deceased's death." Applying the same reasoning to the point here in question plaintiff's instruction required the jury to find that the plaintiff was in the exercise of due care, that the defendant was negligent in certain respects and his negligence was the proximate cause of the plaintiff's injuries, and further told the jury that the defendant was liable under such conditions even though his negligence was not the sole proximate cause of the injuries. Brown v. Alton Rd. Co., 236 Mo.App. 26, 151 S.W.2d 727, 743. We believe there was no error in plaintiff's Instruction 2.
Defendant next claims error in the giving of plaintiff's Instruction 3, which read as follows:
"The Court instructs the jury if under all the instructions of the Court and upon the greater weight of the credible evidence in the case your verdict is in favor of plaintiff Mrs. Hieber, then in measuring, estimating and determining the amount of damages to be awarded her you will take *125 into consideration the nature, character and extent of all injuries, if any, which you believe from the evidence she sustained as a direct result of said collision at the time and place referred to in evidence, whether same are permanent, all physical pain and mental anguish, if any, which you believe from the evidence she has suffered as a direct result thereof, all physical pain and mental anguish, if any, which you believe from the evidence she will hereafter suffer as a direct result thereof, all reasonable and necessary medical expenses, if any, incurred or to be incurred by her as a direct result thereof not exceeding on this item $925.00, and you may also consider any impairment, if any, of her capacity to work and earn money which you believe from the evidence to be the direct result of any injuries, if any, so received by her at said time and place, and if your verdict is for her it will be in such amount as a whole, stated in one lump sum, as you believe from all the evidence will fairly and reasonably compensate plaintiff for all injuries, if any, which you believe from the greater weight of the credible evidence in the case she so received at said time and place."
It is first contended that the above instruction directed the jury to allow double and treble damages. It is argued that it allows damages for the nature, character and extent of the injuries, which would include all damages except medical expenses, and, also, allows damages for pain and mental anguish already suffered, which was included in the first classification; that it further allows damages for future pain and anguish, a partial duplication of the first allowance; and further directs the jury to allow her medical expenses not to exceed $925; that it further directs the jury to allow damages for impairment of capacity to work and earn money, which, it is claimed, duplicates the first allowance and in part the second allowance. Thus it is claimed that the instruction allows duplicate damages for physical pain and mental anguish, past and future, and trebles such damages as to impairment of capacity to work and earn money.
The instruction directs the jury, in measuring the amount of damages, if any, to take into consideration the nature, character and extent of the injuries, that is to say, whether permanent or not, whether or not plaintiff suffered or will hereafter suffer pain and anguish as a result of such injuries, whether or not she has incurred medical expenses not exceeding $925, and whether, as a direct result of such injuries, she would suffer an impairment of her capacity to work and earn money. The instruction does not, as defendant claims, direct the jury to allow for all of such items or a duplication of same or any of them, but to consider the same, if any, and to allow one sum that would fairly compensate her for such injuries as the jury might find that she received. Wolfe v. Kansas City, 334 Mo. 796, 803, 68 S.W.2d 821.
Further objection to the instruction is that there was no evidence to support any allowance for impairment of capacity to work and earn money. There was evidence that before the accident plaintiff had enjoyed good health and two years prior thereto had worked in fish canneries, where she was required to stand all day, and suffered no difficulty in that employment; that in the accident she sustained permanent injuries to her lower back and her right kidney, a knot in her right groin in the nature of a femoral hernia, rigidity in the use of her back, enlarged veins in her right leg, some of which burst and formed blood clots, an injury to the fifth lumbar at its juncture with the sacrum; that she suffers pain in standing or walking, continues to have headaches and bodily weakness. Loss of earnings was not pleaded in the petition and there was no evidence of her earnings at the time of the accident, but it was pleaded that as a direct result of defendant's negligence in causing or contributing to her injuries, her capacity to work and earn money was impaired, and there was substantial evidence to that effect sufficient to submit that issue to the jury. We find no error in giving Instruction 3.
*126 Lastly, defendant complains of the refusal of the trial court to dismiss the jury upon its motion because of the conduct of the counsel for the plaintiff in stating to the jury that the defendant had "crucified" plaintiff. In the course of the argument plaintiff's counsel said: "We know that this young man with his sweet old mother by his side, with his instinct of self-preservation and his love of his own mother, when he looked and saw that thing standing there it looked all rightshe said it looked all right; he said it looked all rightand when they got almost up to that track this engine was started and gunned and caught them and crucified this woman, physically and mentally, and made a sufferer of her for the rest of her life.
"Mr. Dabbs: Let the record show that we object to that expression `crucify'.
"Mr. Popham: I withdraw that; it is not a good word.
"Mr. Dabbs: I think the jury ought to be discharged. Such expressions as that have no place in a lawsuit.
"The Court: Overruled.
"Mr. Popham: Let's withdraw the word and say they wrecked this woman's life.
"Mr. Dabbs: Did Your Honor rule on it?
"The Court: Yes, I did.
"Mr. Dabbs: The motion to discharge the jury?
"The Court: Yes; overruled." In Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S.W.2d 961, plaintiff's counsel pleaded with the jury for a verdict for $50,000 because it would be paid by someone else (referring to plaintiff's liability insurance), and it was held that a withdrawal of that statement and an apology by counsel and its exclusion by the court did not remove the prejudicial effect. In Dodd v. Missouri-Kansas-Texas Rd. Co., 353 Mo. 799, 184 S.W.2d 454, 457, an operator of a railroad motor car was overtaken and killed by a train. In the argument of counsel, he pictured the deceased as "run into from the rear, stabbed in the back and killed in cold blood by an engineer who could have stopped." Objection and motion to discharge the jury were overruled by the court. There was no withdrawal by counsel. The Supreme Court ruled that the expression had "a tendency to arouse hostility, resentment, aversion and prejudice" and reversed the judgment. Even if the term used in argument is plainly a colloquialism or an oratorical flourish not intended to be literally true, it may, nevertheless, contain such venom and invective as to arouse prejudice and spite, or may direct the attention of the jury to matters highly improper, prejudicial and immaterial to the case and impossible of cure by withdrawal. The word "crucify" has several meanings, extending from execution by nailing to a cross to cruel treatment. Webster's New International Dictionary. It is claimed by the plaintiff that the defendant negligently, with excessive speed and without warning ran his engine across the city street and into and upon the automobile in which she was riding, injuring her seriously for life. Counsel, in his argument, said defendant thus "caught them and crucified this woman physically and mentally and made her a sufferer for the rest of her life." Upon objection, counsel withdrew the word "crucify", admitting it was "not a good word", whereupon the Court declined to discharge the jury, and counsel then substituted the words: "Wrecked this woman's life". Whether, after such interchange had taken place between Court and counsel, the jury had become and still remained prejudiced or hostile to the defendant by reason of the withdrawn word "crucify" is, we think, under the record, a matter that should rest in the judgment of the trial court, whose opportunities to judge the same were superior to our own. The point is overruled.
Finding no error in the trial, materially affecting the merits of the case, the judgment is affirmed.
All concur.
On Motion for Rehearing or Transfer
In his motion for rehearing or to transfer this cause to the Supreme Court, appellant has raised no material matters of law *127 or fact that were not raised in the briefs and determined by the opinion. He does, however, urge that we overlooked the case of Murphy v. St. Louis Public Service Company, Mo.Sup., 244 S.W.2d 31, cited and discussed in the briefs, and which appellant contends makes the giving of plaintiff's Instruction 3 erroneous. We have again read and studied the opinion in the Murphy case and it is still our belief that the same is not applicable to the case at bar. The motion for rehearing or to transfer this case to the Supreme Court is overruled.
All concur.