Gerald R. KELLY, Respondent,

v.

KANSAS CITY PUBLIC SERVICE COM-PANY, a Corporation, and Harold B. Backer, Appellants.

No. 47461.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

Ima M. Goehring, E. E. Thompson, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for appellants.

John P. Zimmerman, Kansas City, Rufus Burrus, Independence, for respondent.

BARRETT, Commissioner.

The plaintiff, Gerald R. Kelly, driving a 1956 Plymouth station wagon north on Prospect Avenue passed through the light-controlled intersection of 27th Street and by reason of a "traffic jam" at 26th Street stopped with the traffic ahead opposite 2619 Prospect, just behind a Sears delivery truck. While he was thus stopped a Kansas City Public Service Company trolley bus, operated by Harold B. Backer, ran into the

rear end of the stopped station wagon, jamming the front end of it into the rear end of the stopped Sears truck. To recover damages for his resulting personal injuries and the injury to his station wagon Kelly instituted this action against the Kansas City Public Service Company and its trolley bus operator, Backer. A jury awarded the plaintiff a total of $36,000 damages and upon this appeal the defendants make four principal claims: that they are entitled to a new trial because the court erred in giving to the jury instructions 1 and 8, abused its discretion in permitting the plaintiff to, offer evidence in rebuttal, and if they are not entitled to a new trial that the verdict is excessive and should be reduced by remittitur.

First as to the rebuttal evidence: at the close of the defendants' case the plaintiff, over the objection of the defendants, called five witnesses in rebuttal. The defendants, while asserting that the court abused its discretion, admit that they "have found no Missouri decision holding that the trial court had abused its discretion in this regard." And, 6 Wigmore, Evidence, Secs. 1873, 1876, pp. 510, 519, the authority upon which they rely, likewise does not indicate that the court erred in this particular regard. The defendants' tacit admission is perhaps sufficient to dispose of this claim of error. However, without detailing at length and illustrating, some of the testimony was in point of fact rebuttal in character, some of it was collateral if not immaterial, and some of it was appropriately a part of the plaintiff's case in chief. The subject was recently reviewed in Peters v. Dodd, Mo., 328 S.W. 2d 603, 609–610, in which the court excluded rebuttal testimony and here as in that case it does not plainly appear that the court's discretion "has been clearly abused." And see Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 1127, 125 S.W.2d 5, 17–18.

Instruction 1 was the principal instruction and hypothesized the defendants' liability upon a finding of negligence in that the trolley bus operator failed to keep a lookout for plaintiff's station wagon or operated the bus at a greater speed than was reasonable or prudent under the circumstances or operated the bus at a greater speed than would permit the operator to exercise proper control of the bus and to decrease its speed or stop and thus avoid colliding with the station wagon. The appellants have lodged *eight* specific objections to this instruction: (1) failure to hypothesize the alleged negligent rate of speed shown by the respondent's evidence, (2) submitting plaintiff's signals of stopping but failing to submit whether they were timely, (3) submitting that "Plaintiff was not negligent in any respect" which conflicts with instruction 2 defining "ordinary care" and therefore requires of plaintiff only that standard of conduct, (4) it assumes that the operator did operate the bus at a greater speed than was reasonable or prudent, (5) assumes that he operated the bus at a greater speed than would permit him to exercise proper control of the bus and decrease its speed or stop, (6) assumes that he failed to keep a lookout, (7) in saying "Such negligence, if any, directly caused injury to plaintiff" the instruction assumes that the acts set forth in paragraphs 1 and 2 were negligent and (8) assumed that plaintiff was not negligent.

Objections 1, 2, 4, 5, 6 and 7, particularly the arguments with respect to "assumption" of fact or of negligence are all based upon the appellants' assertion that the rate of speed of the trolley bus, what the bus operator was or was not doing, and all other matters involved in the instruction "were in dispute" or "were controverted issues" or "disputed issues" and therefore the instruction erroneously and prejudicially assumed them. What the appellants must mean by their assertion and argument is that in their pleadings they denied these particular matters and, therefore, the burden of proof was upon the plaintiff to sustain his claim by proof and furthermore to specifically hypothesize the proof in his principal instruction. What the appellants overlook is that long after

the pleading stage and by the time the case was submitted to the jury there was not in point of fact any real dispute or controversy as to a single essential fact. As to the facts of the occurrence the only difference between the plaintiff and the defendants was whether there was once another vehicle between the trolley bus and the station wagon. The bus operator said there was, an "old model" car 70 feet ahead, and that it pulled into the curb near 2619 Prospect without warning and that was his excuse, as he repeatedly admitted, for taking his "eyes off of the straight-ahead traffic" and "just momentarily" watching to see what became of that old vehicle. No one else, and there were several witnesses, saw this "old model" car and Mr. Backer was unable to otherwise identify it or to pick it out from photographs (taken but a few minutes after the collision) of vehicles along the curbing.

But the presence or absence of this old vehicle aside the facts were that Mr. Backer stopped the trolley bus at 27th Street for passengers and as he pulled away saw the Plymouth station wagon north on Prospect, he said 85 feet away. As he drove down the street he did not apply his brakes, instead he "just released the power" when his attention was "diverted" by the old vehicle and when he again looked ahead at the traffic the station wagon was stopped "45 to 50 feet" away and it was too late to stop and, of course, the front end of the bus crashed into the rear end of the station wagon and knocked it into the rear end of the Sears truck. The plaintiff and the Sears driver who heard the conversation testified that the reason Backer gave for hitting the station wagon was " 'I just wasn't looking.' " An investigating police officer asked Mr. Backer what happened and this was his cryptic report: "He stated he was northbound on Prospect at 20 to 25 miles per hour and realized danger 40 to 50 feet away but was unable to avoid."

But as to the facts bearing upon the acts submitted in the instruction; on a clear, sunny afternoon, about 5:30 on July 18, 1956, the trolley bus admittedly ran into the rear end of the station wagon while it was stopped in the traffic. There were at least three eyewitnesses other than the plaintiff and Mr. Backer and the only difference in their testimony and that of Mr. Backer is that some of them said that the trolley bus was 150 to 175 feet up the street when the station wagon stopped in the traffic. Kelly said that he had been stopped 10 to 12 seconds when the bus struck his station wagon. One witness, a pedestrian, said that when he first saw the bus it was 250 feet away and traveling "at a rapid speed, very rapid speed." Another witness, a young boy on the porch at 2619 Prospect said that the bus was traveling at a speed of 30 to 35 miles an hour 250 feet from the point of collision. The appellants seize upon this particular testimony and urge that there was a dispute as to the speed of the bus and, therefore, the instruction assumes or fails to properly hypothesize the detailed facts with respect to speed. But in this connection the plaintiff, Kelly, traveled north on Prospect at a speed of approximately 20 miles an hour, as he crossed 27th Street on a changing light he saw that the traffic ahead in the 2600 block was stopped and so he pumped his brake to signal and at the same time gave an arm signal for stopping. He stopped about five feet to the rear of the Sears truck and had been stopped 10 to 12 seconds when the trolley bus crashed into the rear of his station wagon. Kelly first saw the Sears truck as he left 27th Street 350 feet ahead—the measured distance from 27th Street to 2619 Prospect is 359 feet. There was no signal or warning from the bus and Kelly did not testify to its speed but others did and except as indicated the witnesses said that just before colliding the speed of the bus was 20 miles an hour. Mr. Backer said that as he left the bus stop he "just pulled out in the stream of traffic and, of course, accelerated" to a maximum speed of 20 to 25 miles an hour after he crossed 27th Street and after his momentary inattention ahead and by the time the bus collided with the station wagon

he had reduced its speed to "five to eight, and not to exceed ten miles an hour."

█ In short, Mr. Backer offered an excuse but the fact was that he did not maintain an observant lookout ahead as well as laterally. Furthermore, in the circumstance of his not looking ahead, even "momentarily," any speed of the bus was hazardous if not negligent. In any event there could be no "dispute" or "controverted issue" as to the fact that the speed of the bus as it left 27th Street was 20 miles an hour and, of course, at that speed and looking elsewhere even momentarily he could not and did not properly operate or control the bus so that he could look ahead and timely decrease its speed or stop upon his recognition of the stopped traffic and danger. In these circumstances and as to these submitted assignments of negligence there were no disputed or controverted fact issues. Hanser v. Lerner, Mo.App., 153 S.W.2d 806. This is not to say that an instruction should or may assume essential facts even when the proof is overwhelming (Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W.2d 559) but it does illustrate that in these circumstances there is no fundamental base for the appellants' claim that the issues were complex or sharply disputed and, therefore, must have been explicitly set forth in detail. Compare Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562.

█ Dahlen v. Wright, 361 Mo. 524, 235 S.W.2d 366, was a nighttime collision, there was a dispute whether the defendant's speed was 35 miles an hour or 65 to 70 miles an hour, and the case was submitted on both humanitarian and primary negligence. As to primary negligence of speed the case simply followed Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, and aside from the fact that the underlying doctrine of these two cases has been modified considerably (Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972), "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction." Hooper v. Conrad, 364 Mo. 176, 188–189, 260 S.W.2d 496, 500–501. The submission here was disjunctive but admittedly there was evidentiary support for each of the assignments and there was no counterclaim or other complexity (Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756) and there was no injection of "concurring and joint" negligence. Jones v. Rash, Mo., 306 S.W.2d 488, 491. While there was an original plea of contributory negligence there was no evidence in support of the claim and the defendants made no effort to support or submit it and the plaintiff was not bound to negative the bare charge. Shepard v. Harris, Mo., 329 S.W. 2d 1. It is not necessary to sprinkle an instruction with "if you so find" in order to avoid the charge of assumption of facts (88 C.J.S. Trial § 327(d), p. 857); if the instruction in its beginning, as this one does, plainly requires the jury to find the hypothesized facts from the evidence that is sufficient.

█ There was no evidence contradictory of Kelly's testimony that he gave two signals of his intention to stop, and, since Backer was not looking or did not "realize danger" until as he said it was too late, it would seem to make but little if any difference whether his signals were "timely." In any event there was no evidence from which the jury could draw the inference that his signals were not timely. It was not as if the plaintiff had submitted his cause and the defendants' liability upon a finding of failing to signal and omitted a finding of its timeliness as was the fact in Stermolle v. Brainard, Mo.App., 24 S.W.2d 712. The instruction concludes with the finding that

"Plaintiff was not negligent in any respect" but we are unable to see how this phraseology assumes that he was not negligent or that it imposed upon him the obligation to use "only ordinary care" as that term was defined in instruction 2. The vehicle involved here was a trolley bus (the defendants took the position that it was not a "motor vehicle") and defendants' counsel made the utmost use of the fact in his argument to the jury. After explaining what had caused Backer "to divert his attention momentarily" counsel said, "This was not an automobile. His duty on the street in driving was to exercise the ordinary care." He went on to explain the differences in the degrees of care and finally called upon the jury to consider all the instructions and particularly that "he acted as the Court tells you by way of definition: 'The jury are instructed that "ordinary care" as used in these instructions means such care as an ordinarily prudent person would exercise under like or similar circumstances * * *'" and so he continued and argued that Mr. Backer had done just that. Instruction 2, whether correctly defining the defendants' duty or not, had no application to the plaintiff and in these circumstances did not alter his duty and was not erroneous in submitting conflicting standards of care. Compare: Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, and Young v. Anthony, Mo., 248 S.W. 2d 864.

■ And in conclusion as to all of the assignments specifically directed against instruction one and in the particular circumstances of this record, the facts were very simple, "easily understood and within the common knowledge of the members of the jury." Carson v. Evans, 351 Mo. 376, 381, 173 S.W.2d 30, 32. This was indeed a most elemental motor vehicle collision and in the absence of plainly confusing or misleading instructions manifestly infringing substantial rights in a demonstrably substantial manner there was no error "materially affecting the merits of the action" (V.A.M.S. § 512.160(2)) and demanding the granting of a new trial. Carson v. Evans, supra; Hooper v. Conrad, supra; Moloney v. Boatmen's Bank, 288 Mo. 435, 458, 232 S.W. 133; Crosby v. St. Louis County Cab Co., Mo.App., 320 S.W.2d 944; Stewart v. Boring, Mo., 312 S.W.2d 131, 134; Cammarata v. Payton, Mo., 316 S.W. 2d 474; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912.

■ Instruction 8 was upon the measure of damages and the appellants make three objections to that instruction: (1) that there was "no substantial evidence to support the submission of impairment in plaintiff's capacity to work and labor and earn a livelihood in the future," (2) that in mentioning "impairment, if any, in plaintiff's capacity to work and labor and earn a livelihood" the instruction improperly authorizes a recovery of triple damages and (3) in submitting impairment of capacity to work and labor the instruction ignores "vital, qualifying evidence" of his own physician that he would suffer no such impairment if he had another operation. There is no substance in points (1) and (3); it was not claimed, proved or submitted that Kelly was totally disabled or that he was so incapacitated that he could not work at all and, therefore, had no earning capacity whatever. It is not necessary to lengthen this opinion by detailing the evidence and demonstrating, it was the opinion of Kelly's doctors that he was not capable of doing heavy work—one doctor said, "In my opinion he is disabled from manual labor or work involving standing for long hours on his feet." He was a tool and die maker and prior to his injury earned about $6,000 a year. Since his injury he has had, largely by reason of friends, two or three jobs of light tool and die employment but at reduced rates of pay and when the work became heavy was unable to continue, gave up the jobs and attempted to "pick up a few odd jobs of my own." In the first half of 1957 at the light job he earned $3,351.16 and in the remainder of the year earned $280. In 1958, January to October, he earned $1,280. Since his laminectomy the

doctors have recommended a stabilization operation, in which one out of five "fail" to achieve the desired results, but they have not said that it would restore his capacity to work and labor. In short, there was proof of serious impairment of ability to work and labor, an injury for which he was entitled to recover damages. Bone v. General Motors Corp., Mo., 322 S.W.2d 916, 922–923; Shepard v. Harris, Mo., 329 S.W. 2d 1, 11–12.

◼ The only meritorious problem involved in all of these assignments is the old question of whether an instruction on the measure of damages which permits an award, as this instruction does, for all injuries and also permits the jury to take into consideration "impairment of earning capacity" or impairment of ability to work and labor is erroneous in that it submits and permits recovery of "double compensation"—here called triple recovery. It would serve no useful purpose to again attempt a review of this subject other than to repeat that the cases involving married women and minors, who it was said had "no established record of earnings," are not in point. See for example Wolfe v. Kansas City, 334 Mo. 796, 68 S.W.2d 821, and Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583. Instruction 8 is a rescript of the instructions in Bone v. General Motors Corp., supra; Moss v. Mindlin's, Inc., Mo., 301 S.W.2d 761, and Murphy v. St. Louis Public Service Co., 362 Mo. 772, 244 S.W.2d 31. While this and similar instructions have not been "warmly commended" (no case has been reversed and remanded because of them), the test of duplication of damages is whether the instruction would lead the jury to believe that an award must be made "for respondent's *injuries* and then allow him an additional sum for *damages*." Wild v. Pitcairn, 347 Mo. 915, 926, 149 S.W.2d 800, 805. And it has been repeatedly said that instructions do not have the effect of permitting duplication when they do not "direct the jury to *allow* for all of such items or a duplication of same or any of them, but to *consider* the same, if any, and

to allow one sum that would fairly compensate her for such injuries as the jury might find that she received." Hieber v. Thompson, Mo.App., 252 S.W.2d 116, 125; Wolfe v. Kansas City, supra.

It has been recently indicated that there is still some unresolved doubt if not conflict in the cases dealing with this problem. Seymour v. House, Mo., 305 S.W.2d 1, 7. The only case that could cast any doubt upon what has been the general policy or rule or that supports the appellants' claim is Murphy v. St. Louis Public Service Co., supra, and what the court there said upon the subject was not necessary to the decision. The most recent case in which the problem was in fact involved is the decision in Moss v. Mindlin's, Inc., which admittedly supports the respondent and the instruction and even though a divisional opinion impliedly purports to overrule the Murphy case. The distinctions in the cases and the instructions are appropriately noted in the Moss case and, as indicated, impairment of earning capacity or ability to work and labor is a matter which the jury may properly consider in awarding damages. Bone v. General Motors Corp., supra; Shepard v. Harris, supra. Other than as indicated in the Murphy case, in comparable circumstances there has never been any really serious problem and new trials have not been granted because of any error in similar instructions. Wild v. Pitcairn, supra; Hieber v. Thompson, supra; Wolfe v. Kansas City, supra; Moss v. Mindlin's, Inc., supra.

◼ As to the excessiveness of the verdict of $36,000 it is not necessary to detail the evidence as the parties have in their briefs and indicate the permissible inferences; similar injuries and treatment with attendant disability have been described in detail in several comparable cases and so will be but briefly indicated here. The plaintiff was forty-three years old when injured on July 18, 1956, and had a life expectancy of about twenty-four years. His hospital, medical and surgical expense was

$3,304.08, automobile damage $550 and loss of earnings, as calculated by the plaintiff, of $9,098.84, thus a total monetary loss of $12,952.92 is accounted for. From July 18 to September 5, 1956, he was treated intermittently by Dr. Atcheson who tried unsuccessfully to relieve his pains by means of medicine and heat therapy. When finally he did not respond to this treatment Dr. Atcheson recommended his hospitalization and he entered St. Joseph's Hospital on September 4. He was in traction nine weeks and when he failed to respond to that treatment orthopedic specialists, Drs. Pipkin and Piper, were called. A myelogram confirmed their previous diagnosis of an injured disk between the fourth and fifth lumbar vertebrae. Following their advice and to relieve the pressure on the nerves a laminectomy was performed November 5 and the injured disk was removed. The pathologist's report, according to them, confirmed their diagnosis and the degeneration of the disk. Kelly was discharged from the hospital on November 17th but has since worn a brace or support. There has been a narrowing between the "4th and 5th separation" and he has an unstable back which his doctors say is permanent and has rendered him incapable of again doing heavy work, particularly as a tool and die maker. When the laminectomy was performed his surgeons did not think a further stabilization operation was indicated; they have since come to the conclusion that while a stabilization or fusion would still leave him with an abnormal back and prevent his doing heavy work it is nevertheless advisable. It was the opinion of the defendants' doctors, Drs. Pickard and Rhoades, that the degeneration of the disk had started prior to the injury, if there was degeneration, and it was their opinion, despite the operation, that he "could return to regular work" and that there was no necessity for a stabilization operation. In short, they found him to be completely normal and were unable to account for his present complaints.

Under the general rules with respect to remittiturs and in quite similar injuries verdicts of $40,000 and $37,500 have been approved. In some of the instances there was but a diagnosis of a disk injury without the confirmation of a myelogram and in one or more of the cases there had been no operation. In Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12, there was an unoperated herniated disk injury between the 5th lumbar vertebra and the sacrum and this court in 1950, although the trial court had required a remittitur of $10,000, reduced a total award of $45,000 to $37,500. In Pinter v. G., M. & O. R. Co., 362 Mo. 887, 245 S.W.2d 88, there were other injuries but particularly a disk injury and an operation between the sacrum and the 5th lumbar vertebra and this court refused to further reduce a $40,000 award after a trial court remittitur of $5,000. In Rogers v. Thompson, Mo., 308 S.W.2d 688, 693, the plaintiff was but twenty-four years old and this court refused to reduce a $40,000 judgment for a confirmed but unoperated "ruptured and prolapsed intervertebral disk with resulting disability" between the 5th lumbar and 1st sacral vertebrae.

In conclusion, whatever one may think of the size of these verdicts and regardless of what the truth may be as to the seriousness of these injuries and the disabling effect of the operations, it is obviously not possible in view of these precedents to reduce this verdict of $36,000. Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and ELMO B. HUNTER, Special Judge, concur.